**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 08-1890

ERIC SARSFIELD,

Plaintiff, Appellant,

v.

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,
GREAT AMERICAN ALLIANCE INSURANCE COMPANY,
GREAT AMERICAN ASSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Siler[*], and Howard, Circuit Judges.

William G. Beck, with whom Michael S. Cessna, Ian Hale, Barry C. Scheck, and Deborah L. Cornwall, were on brief for appellant.
John P. Graceffa, with whom Richard W. Jensen, and Thomas M. Prokop, were on brief for appellees.

July 1, 2009

---

[*] Of the Sixth Circuit, sitting by designation.

**SILER**, <u>**Senior Circuit Judge**</u>.  Plaintiff Eric Sarsfield appeals the district court's grant of summary judgment in favor of defendant Great American Insurance Company of New York.  The district court found that Sarsfield's complaint against the City in the underlying action did not allege a wrongful act during the policy period, and therefore Great American did not have a duty to defend or indemnify.  Sarsfield appeals the grant of summary judgment.  For the following reasons, we affirm.

**I.**

Sarsfield was convicted of rape in 1987 and served almost ten years in prison.  In 2000, he was exonerated based on DNA evidence.  He then sued the City of Marlborough, Massachusetts, and several of its employees for federal civil rights and state law claims arising out of his arrest, prosecution, and imprisonment.  Reading the complaint as a whole, including the detailed allegations of the individual counts, a reasonable reader would conclude that Sarsfield was complaining about two different forms of misconduct by the police:

First, that the police engaged in a highly suggestive identification process that coerced the victim of the rape to identify Sarsfield as her rapist.  Compounding matters, the police did not disclose in connection with the trial the victim's hesitancy in identifying Sarsfield, nor the measures taken by the police department to make it appear to the victim that Sarsfield

was the rapist (including requiring Sarsfield to wear the rapist's jacket during a one-on-one identification).

Second, that one of the police officers drafted a police report that falsely stated that Sarsfield had made several incriminating statements. The report "turned up" only three days before trial, but the only issue before the trial judge was its timing, not its veracity. It appears that the report was entered into evidence with the police officer testifying to its contents at trial as a rebuttal witness to Sarsfield.

In response to Sarfield's suit, the City requested coverage from Great American, which had issued to the City one-year general liability policies from 1991-2000. Great American denied the request, and the City entered into a settlement with Sarsfield. It stipulated the City's liability, provided for a $2 million settlement payment, and assigned to Sarsfield its right to recover defense costs, the settlement payment, and any other recoverable costs, expenses, damages, fees and penalties.

The district court held a bench trial on damages, entered final judgment against the City pursuant to the stipulation, and awarded Sarsfield approximately $13 million in damages. Sarsfield sought to recover the portion of the judgment allocated for the time period after July 1, 1991 ($11,615,940), plus attorneys' fees and costs for the underlying suit.

The parties filed cross-motions for summary judgment. Sarsfield asserted that Great American breached its duty owed to the City by not defending and indemnifying the City in the underlying suit. Great American asserted that it had no duty to defend or indemnify. The district court denied Sarsfield's motion and granted Great American's motion for summary judgment, concluding that Great American did not have a duty to defend or indemnify the City.

**II.**

"We review de novo the grant or denial of summary judgment, as well as pure issues of law." Rodriquez v. Am. Intern. Ins. Co. of P.R., 402 F.3d 45, 46-47 (1st Cir. 2005) (internal citations omitted). "The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006). "The interpretation of an insurance contract and the application of policy language to known facts present questions of law for the judge to decide." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530 (Mass. 2003). The parties agree that Massachusetts law controls.

Massachusetts courts use general rules of contract interpretation to construe an insurance policy. Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). The duty to defend is broader than the duty to

-4-

indemnify.  Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1158 (Mass. 1989).  "The duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer."  Id.  We have described the analytical framework for duty-to-defend cases:

> [T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are "reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.

Herbert A. Sullivan, Inc., 788 N.E.2d 522 at 530 (internal quotation marks and citations omitted).  Generally, the policyholder bears the initial burden of proving coverage.  Camp Dresser & McKee, Inc. v. Home Ins. Co., 568 N.E.2d 631, 633 (Mass. App. Ct. 1991).

### III.

Sarsfield bases his claim for insurance coverage upon the Law Enforcement Liability ("LEL policy") coverage included in the general liability policies from 1991 through 2000, specifically relying on the policy which became effective on July 1, 1992.  The policies contained the following relevant language:

> We will pay those sums that the Insured becomes legally obligated to pay as damages because of "wrongful act(s)" which result in:
>
> 1. personal injury;
> 2. bodily injury;
> 3. property damage;

caused by an "occurrence" and arising out of the performance of the Insured's duties to provide law enforcement activities. This insurance applies to "wrongful act(s)" which occurs in the "coverage territory" and during the policy period.

We will have the right and duty to defend any "suit" seeking those damages.

. . . .

1. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . . .

3. "Occurrence" means an event, including continuous or repeated exposure to substantially the same general harmful conditions.

4. "Personal Injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

. . .

    c. false arrest, detention or imprisonment;
    d. malicious prosecution;
    . . .
    f. humiliation or mental distress;
    . . .
    i. violation of civil rights protected under 42 USC
    1981 ET sequential
    [sic] or state law;

. . . .

7. "Wrongful Act(s)" means any or all of the following:
    a. actual or alleged errors;
    b. misstatement or misleading statement;
    c. act or omission; or
    d. negligent act or breach of duty;
    by any Insured while performing law enforcement
    duties.


Sarsfield argues that the "wrongful acts" occurring after 1992 were the City police officers' conduct in affirmatively covering up and failing to turn over exculpatory evidence once Sarsfield was in prison. As to the "personal injury," he argues that the injuries were non-bodily injuries that arose out of the

offenses of denial of parole, denial of access to courts for post-conviction relief, and having to register as a sex offender. Great American argues that the "wrongful acts" at issue here are the arrest, malicious prosecution, and false imprisonment of Sarsfield, and since these all occurred before the policy became effective, they do not trigger coverage. It asserts that there is no covered injury because all of the alleged injuries arise out of offenses, including malicious prosecution and false arrest, which occurred before 1992.

The district court first found that Sarsfield's complaint did not allege any wrongful act that occurred after 1992. It said the only two claims Sarsfield asserted in his complaint that related to the officers' ongoing concealment were the claim for suppression of exculpatory evidence and conspiracy to violate his constitutional rights. It found these to be wrongful acts occurring before the policy period because these claims were presented as the officers' concealment from the prosecutor, and therefore the wrongful acts ended before Sarsfield was incarcerated and the policy period began.

Next, the district court assumed, arguendo, that the complaint alleged wrongful acts based on the officers' violation of a continuing duty to disclose their misconduct. Even if this were sufficient, it found that the injuries resulting therefrom were not distinct from the injuries incurred upon conviction and

-7-

imprisonment. Further, it found that even if the concealment could be said to cause a distinct injury, because it first occurred prior to the policy period, any resulting injury would predate the policy. Finally, the court considered whether the concealment could result in a "continuing injury" and found that it could not be framed this way because theories of continuing injury only apply in tort cases which concern injuries which may have existed but were unknown at the time the insured purchased insurance.[1]

Because we find that the complaint itself failed to allege wrongful acts occurring within the policy period, we affirm the district court's holding only to the extent it rested on this ground. Finding this sufficient, we do not reach the parties' arguments relating to that holding.

The policy states that the insurance "applies to 'wrongful act(s)' which occurs . . . during the policy period." This language supports Great American's argument that this is an "occurrence policy," as opposed to a "claims made" policy, as argued by Sarsfield. "An 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 535 (1978) (citing Barry

---

[1] On appeal, Sarsfield explicitly states he does not make a "continuing injury" argument.

v. St. Paul Fire & Marine Ins. Co., 555 F.2d 3, 5 n. 1 (1st Cir. 1977)). Therefore, in order for Sarsfield to succeed, he must show that his complaint is "reasonably susceptible" of an interpretation that it describes a "wrongful act" that occurred after 1992, when coverage began.

The provision of the complaint relied on by Sarsfield to show he sufficiently alleged a "wrongful act" occurring during the coverage period is paragraph 53 of his third amended complaint:

> Throughout each year of Mr. Sarsfield's decade of imprisonment, and indeed in each year of Mr. Sarsfield's subsequent parole and after his exoneration, [the defendant police officers] continued to cover up their misconduct, including that they had used unduly suggestive identification procedures with [the rape victim], fabricated evidence and testified falsely at Mr. Sarsfield's criminal trial. During each day that passes during which defendants refuse to come forward, they violate their ongoing duties to Mr. Sarsfield and cause him continued suffering. Indeed, to date none of these defendants had admitted the truth about their misconduct.[2]

As the district court found, the only concealment specifically discussed was tied to concealment from the prosecutor. The clause stating that the defendants "continued to cover up their misconduct" (the "misconduct" being further described as including the suggestive identification, fabrication of evidence and false

---

[2] Paragraph 53 was a statement in the "Facts" section of the complaint, and each count started off with a statement incorporating "all of the foregoing," yet nowhere in the "Counts" listed does Sarsfield specifically discuss this ongoing concealment. Each count re-enumerated the relevant facts to the claim specifically, and no count included any facts specifically showing ongoing concealment.

-9-

testimony at the trial) is not enough to allege a "wrongful act" occurring during the coverage period.  Therefore, it cannot be said that Great American, acting as "an objectively reasonable insured, reading the relevant policy language," would expect these alleged "wrongful acts" to be covered.  See Hazen Paper Co. v. United States Fid. & Guar. Co., 55 N.E.2d 576 (Mass. 1993).

## IV.

In sum, Great American had no duty to defend or indemnify the City for Sarsfield's cause of action.

Affirmed.