# United States Court of Appeals
## For the First Circuit

No. 11-2072

ONEBEACON AMERICA INSURANCE COMPANY,

Plaintiff, Appellant,

v.

COMMERCIAL UNION ASSURANCE COMPANY OF CANADA
n/k/a AVIVA INSURANCE COMPANY OF CANADA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Torruella, Boudin, and Thompson,
Circuit Judges.

Kevin J. O'Connor, with whom Jennifer L. Noe and Hermes, Netburn, O'Connor & Spearing, P.C., was on brief for appellant.
Benjamin L. Hincks, with whom Wynter N. Lavier and Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., were on brief for appellee.

July 11, 2012

**TORRUELLA, Circuit Judge.** This case concerns a reinsurance dispute between an American insurance company and a Canadian insurance company. The American company, Plaintiff-Appellant OneBeacon America Insurance Company ("OneBeacon"), claims that the Canadian company, Defendant-Appellee Aviva Insurance Company of Canada ("Aviva"), is obligated to reinsure OneBeacon for policies OneBeacon issued to certain entities in the early 1980s. Both parties filed cross-motions for summary judgment, and the district court denied summary judgment to OneBeacon and granted summary judgment to Aviva. OneBeacon now appeals, challenging both summary judgment rulings. After careful review, we affirm the district court's denial of summary judgment to OneBeacon and award of summary judgment to Aviva.

## I. Background

### A. The 1980 OneBeacon Policy and the 1980 Aviva Policy

In the early 1980s, OneBeacon and Aviva were both affiliated members of the Commercial Union group of insurance companies (the two companies are no longer affiliated); OneBeacon was based in the U.S., while Aviva was based in Canada.[1] On March 28, 1980, OneBeacon issued an insurance policy (the "1980 OneBeacon Policy") to two U.S.-based subsidiaries of Harrisons & Crosfield (Canada) Ltd: Harrisons & Crosfield (America), Inc. and

---

[1] During this time period, OneBeacon was known as the Commercial Union Insurance Company, and Aviva was known as the Commercial Union Assurance Company of Canada.

Harrisons & Crosfield (Pacific) Inc. (collectively, "Harrisons US"). The 1980 OneBeacon Policy was effective from March 28, 1980 through April 1, 1981 and was identified as policy no. C8-9101-002. The Policy contained "Endorsement Number 4,"[2] (the "1980 OneBeacon Endorsement Number 4") which provides:

> It is understood and agreed that this policy or any renewal thereof is 100% reinsured by [Aviva] policy number 6687287 effective 3/28/80 to 4/1/81.
>
> It is further agreed that cancellations of this policy C8-9101-002 or any renewal thereof or policy 6687287 or any renewal thereof shall be reason for automatic cancellations of the other policy.

The premium listed on the 1980 OneBeacon Policy is "Canadian $45,530." The "Producer" code for the 1980 OneBeacon Policy is "02-20211."

Also on March 28, 1980, Aviva issued an insurance policy (the "1980 Aviva Policy") to Harrisons & Crosfield (Canada) Ltd. ("Harrisons Canada") with the policy no. 6687287. The 1980 Aviva Policy contains a "Differences in Conditions Endorsement" (the "1980 Aviva Endorsement"), which states:

> In consideration of the premium charged, the Insurer agrees that this policy is placed in conjunction with and reinsures Policy No. CL C8-9191-002 issued by [OneBeacon], or any renewal thereof, in respect of:

---

[2] An "endorsement" is "an amendment to an insurance policy." Black's Law Dictionary 607 (9th ed. 2009).

Insured: Harrisons & Crosfield(America)Inc.,
Harrisons & Crosfield(Pacific)Inc.

. . .

Exceptions: This insurance differs from the policy which it follows in the following particulars:

(a) Premium: $45,530 (Canadian Funds-Deposit) The Limit of Liability under either or both policies shall not exceed $1,000,000.00 as set forth in Policies 6687 and CL C8-9101-002 or any renewal policies issued by this Insurer.

On November 26, 1980, Aviva issued to OneBeacon "reinsurance certificate No. 9009419" (the "Facultative Certificate")[3] for the "reinsurance term" of March 28, 1980 to April 1, 1981. The Facultative Certificate states that Aviva reinsures policy no. C8-9101-002 (the 1980 OneBeacon Policy), and the reinsurance premium listed is $45,530.00 Canadian. The Facultative Certificate's policy period was never extended, nor does a separate facultative certificate exist for any subsequent policy period. The Facultative Certificate is the only direct written agreement between Aviva and OneBeacon on the record.

Aviva sent the Facultative Certificate to OneBeacon via a letter dated November 26, 1980, along with a check for $4,553 Canadian. The letter states: "Further to yours of July 1st, 1980. Attached is our Reinsurance Certificate along with our cheque in

---

[3] A "facultative certificate" is a "contract of reinsurance separately negotiated to cover risk under a single insurance policy." Black's Law Dictionary 631 (8th ed. 2004).

-4-

the amount of $4,553.00 Canadian being your override commission of 10% of the premium which was $45,530.00 Canadian."

**B. The 1981 Aviva Endorsement and the 1981 and 1982 OneBeacon Policies**

In 1981, OneBeacon issued a policy to Harrisons US, effective April 1, 1981 to April 1, 1982, with the policy no. C8-9138-002 (the "1981 OneBeacon Policy"). Above the phrase "renewal of or previous no." is the policy number C8-9101-002, which corresponds to the 1980 OneBeacon Policy. The named insureds on the 1981 OneBeacon Policy are Harrisons US and Harcros Inc.,[4] and the listed "Additional Insureds" are Harrisons & Crosfield Ltd. and Wilkinson Linatex.[5] The Producer code for the 1981 OneBeacon Policy is "02-20020." The premium amount listed on the 1981 OneBeacon Policy is $24,000 U.S. The 1981 OneBeacon Policy <u>does not</u> contain the 1980 OneBeacon Endorsement Number 4 or any similar provision indicating that the 1981 OneBeacon Policy was reinsured by any Aviva policy.

Around the same time, Aviva issued an endorsement (the "1981 Aviva Endorsement") to the 1980 Aviva Policy that extended the policy period from March 28, 1981 to March 28, 1982.

---

[4] In 1979, Harrisons Canada formed Harcros Inc., a brokerage house that placed insurance for Harrisons US and Harrisons Canada between 1979 and 1986.

[5] The Additional Insureds are only insured "in respect of their direct sales into the United States of America, its territories and possessions."

Significantly, the 1981 Aviva Endorsement explicitly excluded Harrisons US from coverage under the 1980 Aviva Policy. The 1981 Aviva Endorsement provided:

> It is further understood and agreed that the following Corporations are specifically excluded from this policy which shall not inure to their benefit in any way:
>
> ...
>
> Harrisons & Crosfield (America) Inc.
>
> ...
>
> Harcros Inc.
>
> ...
>
> Harrisons & Crosfield (Pacific) Inc.

In 1982, OneBeacon issued a policy to Harrisons US with the policy no. C8-9138-007 (the "1982 OneBeacon Policy"). OneBeacon has not located a copy of the 1982 OneBeacon Policy, but the parties agree that the 1982 OneBeacon Policy was a renewal of the 1981 Policy. In addition, in 1982, Aviva again extended the term of its policy issued to Harrisons Canada by one year, to March 28, 1983.

**C. Premium Evidence**

The record contains a "ledger" from OneBeacon that includes entries pertaining to payments received in connection with the Harrisons US policies. The ledger entry for policy no. 9101-002, the 1980 OneBeacon Policy, shows that OneBeacon received a premium of $4,252 U.S., even though the premium amount listed on

-6-

the 1980 OneBeacon Policy was $45,530 Canadian. In addition, the "reinsurer" column in the entry for the 1980 OneBeacon Policy lists a reinsurer identified as "C44." However, the "reinsurer" column of the entry for policy no. 9138-002, the 1981 OneBeacon Policy, is left blank, showing no reinsurer at all for the 1981 OneBeacon Policy. This entry also indicates that OneBeacon received a $24,000 premium, which corresponds exactly with the premium amount listed on the 1981 OneBeacon Policy. The "reinsurer" column for the entry corresponding to the 1982 OneBeacon policy is also blank. The ledger does not indicate that OneBeacon ever shared any of the premiums it received for the 1981 or 1982 OneBeacon Policies with Aviva.

## D. Procedural History

In 1998, OneBeacon received notice of lawsuits against Harrisons US for asbestos-related injuries. Based upon the coverage it issued to Harrisons US under the 1980, 1981, and 1982 OneBeacon Policies, OneBeacon entered into a defense cost-sharing arrangement with Harrisons US's other insurers for claims arising from the covered period. In November 2007, OneBeacon requested that Aviva fully indemnify OneBeacon for costs incurred in connection with the Harrisons US claims. Aviva responded that it would reimburse OneBeacon for only one-third of defense expenses and indemnity payments.

On February 2, 2010, OneBeacon filed suit against Aviva in the U.S. District Court for the District of Massachusetts. OneBeacon sought a declaration that Aviva had a contractual obligation to reinsure the 1980, 1981, and 1982 OneBeacon Policies issued to Harrisons US, and also sought damages for Aviva's alleged breach of contract. On June 24, 2011, OneBeacon and Aviva filed cross-motions for summary judgment. On August 18, 2011, the district court denied OneBeacon's motion and granted Aviva's. See OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co., 804 F. Supp. 2d 77 (D. Mass. 2011). The court pointed out that the Facultative Certificate was the only contract on the record between the two parties. See id. at 87. The court then held that because the Facultative Certificate unambiguously stated that the term of reinsurance ended after April 1, 1981, Aviva did not reinsure the 1981 or 1982 OneBeacon Policies. Id. The court further concluded that the other evidence on the record also suggested that Aviva reinsured only the 1980 OneBeacon Policy. Id. at 86-88.

OneBeacon now appeals both the denial of its motion for summary judgment and the grant of summary judgment to Aviva.

## II. Discussion

### A. Standard of Review and Applicable Law

We review a grant or denial of summary judgment by the district court de novo. Sarsfield v. Great Am. Ins. Co. of N.Y., 335 F. App'x 63, 65 (1st Cir. 2009). "[W]e are not married to the

-8-

trial court's reasoning but, rather, may affirm on any independently sufficient ground made manifest by the record." Cahoon v. Shelton, 647 F.3d 18, 22 (1st Cir. 2011). Where, as here, we are presented with cross-motions for summary judgment, we "must view each motion, separately," in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor. Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010). "The presence of cross-motions neither dilutes nor distorts [the de novo] standard of review," Mass. Museum of Contemporary Art Found., Inc. v. Buchel, 593 F.3d 38, 52 (1st Cir. 2010)(internal quotation marks omitted), and thus we are obligated to make a determination "based on undisputed facts whether either the plaintiffs or the defendants deserve judgment as a matter of law." Hartford Fire Ins. Co. v. CNA Ins. Co. (Europe) Ltd, 633 F.3d 50, 53 (1st Cir. 2011).

In order to prevail on a motion for summary judgment, the moving party must show "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Baltodano v. Merk, Sharp, and Dohme (I.A.) Corp., 637 F.3d 38, 41 (1st Cir. 2011). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal quotation marks omitted). On issues where the movant does not have

-9-

the burden of proof at trial, the movant can succeed on summary judgment by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Both parties applied Massachusetts law in their arguments before the district court, and both apply Massachusetts law in their arguments before this Court. "[A] diversity court is free to honor the parties' reasonable agreement" regarding which state's law applies. Artuso v. Vertex Pharms., Inc., 637 F.3d 1, 5 (1st Cir. 2011) (citing Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991)). Thus, we apply Massachusetts law in this case.

Under Massachusetts law, the insured bears the burden of demonstrating that a claim falls within a policy's affirmative grant of coverage. Markline Co. v. Travelers Inc. Co., 424 N.E.2d 464, 465 (Mass. 1981). Therefore, as the party seeking insurance coverage, it is OneBeacon's burden to prove that Aviva agreed to reinsure the 1981 and 1982 OneBeacon Policies.

"The interpretation of an insurance contract and the application of policy language to known facts present questions of law for the judge to decide." Sarsfield, 335 F. App'x at 65 (internal quotation marks omitted); see also Merchs. Ins. Co. v. U.S. Fid. and Guar. Co., 143 F.3d 5, 8 (1st Cir. 1998). The interpretation of an insurance contract should be "according to the

fair and reasonable meaning of the words in which the agreement of the parties is expressed." Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 425 (Mass. 2007) (internal quotation marks omitted). Additionally, every word in an insurance contract "must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Id.

**B. OneBeacon's Motion for Summary Judgment**

To prevail on summary judgment, OneBeacon must show that there are no material facts in dispute and that as a matter of law Aviva provided reinsurance coverage for both the 1981 OneBeacon Policy and the 1982 OneBeacon Policy. As the district court noted, the only direct agreement between OneBeacon and Aviva in the record is the Facultative Certificate, which clearly indicates that the term of Aviva's reinsurance obligation was from March 28, 1980 to April 1, 1981. OneBeacon argues that the agreement between it and Aviva was created by the 1980 OneBeacon and Aviva Policies rather than by the Facultative Certificate. OneBeacon contends that the 1980 Aviva Policy reinsures the 1980 OneBeacon Policy and any renewals, and that the Facultative Certificate, which was issued several months after the 1980 Policies, was a mere confirmation of the reinsurance relationship that already existed between the two insurance companies.

-11-

However, even if we assume _arguendo_ that the 1980 Aviva and OneBeacon Policies formed the parties' agreement in 1980, this does not help OneBeacon. For if the various 1980 policies established the original agreement between the parties, the record makes clear that the parties changed the terms of their agreement in 1981.

The 1981 Aviva Endorsement explicitly changed the scope of Aviva's obligations. The Differences in Condition Endorsement in the original 1980 Aviva Policy stated that Aviva would reinsure OneBeacon's coverage to Harrisons US. However, the 1981 Aviva Endorsement stated that Harrisons US was "specifically excluded from this policy which shall not inure to [its] benefit _in any way_" (emphasis added). OneBeacon suggests that the 1981 Aviva Endorsement only eliminated Aviva's direct insurance obligations to Harrisons US while leaving undisturbed Aviva's agreement to reinsure the 1980 OneBeacon policy and its renewals. But the 1981 Aviva Endorsement explicitly states that it "form[s] part of Policy No. 6687287" (i.e., the 1980 Aviva Policy) and that it excludes Harrison US from that policy entirely. Moreover, OneBeacon claims in its reply brief that "the very heart of [OneBeacon's] case" is that Policy No. 6687287 and the 1980 OneBeacon policy combine to "provide the terms of the Reinsurance Agreement between OneBeacon and Aviva." Yet given that Harrisons US is excluded from Policy No. 6687287, and given that Aviva is not a party to the 1980

-12-

OneBeacon policy, it defies logic to say that the two policies in combination create an ongoing obligation that Aviva reinsure OneBeacon with respect to Harrisons US. As amended, Policy No. 6687287 has nothing to do with Harrisons US (Harrisons US is "specifically excluded from this policy"), and the 1980 OneBeacon policy on its own cannot bind Aviva (a non-party to that policy).

Moreover, the 1981 OneBeacon Policy, which OneBeacon claims is a renewal of its 1980 Policy, does not contain the 1980 OneBeacon Endorsement Number 4 or any similar provision indicating that the 1981 OneBeacon Policy was reinsured by Aviva. This omission is consistent with Aviva terminating its reinsurance relationship with OneBeacon and OneBeacon taking on the ultimate insurance risk for Harrisons US in the 1981 policy period. Similarly, there is no indication that the 1982 OneBeacon Policy had the 1980 OneBeacon Endorsement Number 4 or any similar provision. Thus, in contrast to the 1980 OneBeacon policy, the 1981 and 1982 OneBeacon Policies did not tell Harrisons US that Aviva was standing behind OneBeacon as the reinsurer.

Furthermore, if there is some ambiguity regarding the meaning of the 1981 Aviva Endorsement and the 1981 OneBeacon Policy, Massachusetts law allows us to examine the extrinsic evidence to determine whether the parties intended for the reinsurance arrangement to continue after the end of the first year. See Den norske Bank AS v. First Nat'l Bank, 75 F.3d 49, 52

(1st Cir. 1996) ("Although not admissible either to contradict or alter express terms, extrinsic evidence is admissible to assist the factfinder in ascertaining the intent of the parties as imperfectly expressed in ambiguous contract language." (citing Robert Indus., Inc. v. Spence, 291 N.E.2d 407, 410 (Mass. 1973))). Here, the extrinsic evidence on the record convinces us that the reinsurance arrangement did not continue.

Firstly, the fact that there is no Facultative Certificate between Aviva and OneBeacon for the second and third policy years suggests that the relationship between the two companies changed after the first year. Secondly, and most importantly, the evidence regarding the flow of premium payments supports the view that Aviva terminated its reinsurance obligation after the first year. In the first year, in which both parties agree that Aviva reinsured OneBeacon, Aviva received a premium payment of $45,530 Canadian and remitted a 10% fee to OneBeacon. Moreover, the OneBeacon ledger shows that there was a reinsurer for the 1980 OneBeacon policy -- identified with the code "C44." In the second year, however, the OneBeacon ledger reflects that OneBeacon directly received the full $24,000 U.S. premium payment. Furthermore, the ledger does not indicate that there was a reinsurer for the 1981 or 1982 OneBeacon Policies. Further, OneBeacon has not pointed to any evidence that it shared the second- or third-year premium with Aviva. OneBeacon would have

-14-

this Court reach a result that OneBeacon kept all of the premiums for the 1981 and 1982 policy years, but that it bore none of the risk. Such a conclusion would defy economic sense.

Because there is no evidence that Aviva agreed to provide reinsurance beyond the term of the first policy year, OneBeacon is not entitled to judgment as a matter of law. Accordingly, we affirm the district court's denial of OneBeacon's summary judgment motion.

## C. Aviva's Motion for Summary Judgment

As discussed above, the Facultative Certificate, which is the only direct agreement between the parties on the record, unambiguously provides that Aviva's reinsurance obligation terminated after April 1, 1981. Further, also as previously discussed, even if we assume arguendo that the 1980 Aviva and OneBeacon Policies, rather than the Facultative Certificate, formed the original agreement between the parties, OneBeacon cannot show that the original agreement lasted beyond the end of the first policy year. As explained above, both the language of subsequent documents (the 1981 Aviva Endorsement and the 1981 OneBeacon Policy) and the extrinsic evidence (the premium payments and the lack of additional facultative certificates) show that whatever reinsurance arrangement between OneBeacon and Aviva that existed in the first policy year terminated at the end of that year.

-15-

Since it is OneBeacon's burden to prove Aviva's reinsurance obligation, which OneBeacon cannot do, summary judgment for Aviva was appropriate. Accordingly, we affirm the grant of summary judgment to Aviva.

### III. Conclusion

The judgment of the district court is affirmed.

**AFFIRMED.**