# United States Court of Appeals

## For the First Circuit

No. 09-2027

SYLVIO BALTODANO,

Plaintiff, Appellant,

v.

MERCK, SHARP & DOHME (I.A.) CORP.; NILDA VAZQUEZ,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lipez, Leval,* and Thompson, Circuit Judges.

Jane Becker Whitaker for appellant.
Yassmin González-Vélez, with whom Edward Hill-Tolinche and
Pirillo Hill Gonzalez & Sanchez, PSC were on brief, for appellees.

March 3, 2011

---

* Of the Second Circuit, sitting by designation.

**THOMPSON**, **Circuit Judge**.  Sylvio Baltodano says he was unjustly fired for minor infractions as a pretense for his supervisor's discriminatory attitude toward non-Puerto Ricans.  He also claims he was discharged without just cause and in breach of contract, even if discriminatory animus toward non-Puerto Ricans did not motivate his termination.  On an incomplete record, the district court disagreed, granting summary judgment in favor of defendants Merck, Sharp, and Dohme Corporation and Nilda Vazquez, the allegedly discriminatory supervisor.  Baltodano asks that we find the district court's grant of summary judgment premature due to Merck's failure to participate fully in the discovery process.  After sifting through arguments and evidence, we agree that the case was not ripe for summary judgment and remand.

The evidence, viewed in the light most favorable to Baltodano, could support the following facts.  See Galera v. Johanns, 612 F.3d 8, 10 n.2 (1st Cir. 2010).

## Employment with Merck

Baltodano is not from Puerto Rico.  After completing his studies at the University of California, in 1996 he began working for Merck as a sales representative in Nicaragua.  The following year he was promoted to a position in Costa Rica; next came a transfer to Miami, Florida; and then in 2003 he was promoted again, this time to the position of Sales Administration and Compliance Manager in a suburb of San Juan, Puerto Rico.

Merck divides its business into regions, and Baltodano's departure from Costa Rica entailed a move from the CANDEAN Region[1] to the Caribbean Region. These regions maintain different policies and standards – in particular, the CANDEAN Region is not FDA-regulated, but the Caribbean Region is. With unclear motivations, a Merck supervisor specifically told Baltodano and another non-Puerto Rican then-employee of Merck, Francene Matheus, that they would have to work harder than their Puerto Rican co-workers in order to advance. Nevertheless, Baltodano thrived at first in the Caribbean Region, earning another promotion in 2005.

At the outset of the 2005 promotion, Baltodano met with his supervisor, Wendy Perry; they agreed that he would complete product certifications for the drugs Vytorin, Zetia, and Fosamax by the end of June 2005. But the certifications proved very time-consuming. By September 26, 2005, Baltodano had completed only two of the three he had agreed to do; he completed the final certification a few days later. In December 2005, Perry issued him a "Final Warning" as a result of the late certifications. At the same time, Baltodano learned that employees from Puerto Rico were given time off to complete the certification exams. He received no similar accommodation from Merck.

---

[1] The record does not explicitly mention what countries form the CANDEAN Region, but it is clear that Nicaragua is included, as are other countries in Central and South America.

-3-

In early 2006, a new problem arose, this time regarding Baltodano's failure to submit timely expense reports. The details of this problem are spotty, but it is clear that in March 2006 he was suspended for three days. Nonetheless, he earned a merit-based raise that very month. In June 2006, his supervisor, Vincent Caballaro, issued a "Second Final Warning" as a follow-up to the suspension.

In fall 2006, defendant Vazquez became Baltodano's supervisor. Baltodano's court filings paint Vazquez as having lurked in the background up to this point, waiting all the time for a chance to exercise her xenophobic animus against him. As evidence of this animus Baltodano points to a couple of interactions between the two of them.[2] Around this time Baltodano began seeking a transfer to Merck's Miami office for "personal-family" reasons. These plans fell through after Baltodano again submitted late expense reports – September's in late October 2006, and October's in late November. This time, he was fired. A subsequent interview with a firm in Miami – Stiefel Laboratories – resulted in a job offer, which was revoked after a bad reference from Merck.

---

[2] Baltodano testified that in May 2004, at a cocktail party during a three-day meeting, he told Vazquez in essence that some of the sales representatives found her aloof and unapproachable. She did not respond. Six months later, however, she did respond, telling Baltodano she did not appreciate his comment and that he should be more careful because he was not from Puerto Rico.

## Suit against Merck

Baltodano filed a diversity suit against Merck and Vazquez in the U.S. District Court for the District of Puerto Rico. He alleged violations of Puerto Rico Law 100 (employment discrimination), Article II § 8 of the Puerto Rico Constitution (essentially defamation), and Puerto Rico Law 80 (termination without just cause), as well as violations of two Puerto Rico Civil Code provisions – essentially, a breach of contract claim and a defamation claim.

Procedural history is important here, so we will dwell on it a bit longer than usual, beginning mid-discovery. On May 29, 2008, while deposing Vazquez, counsel for Baltodano asked whether Vazquez had disciplined other managers for the same misconduct that had been the basis for her warnings and firing of Baltodano.[3] Vazquez said she could not remember. The same day, Baltodano requested this information from Merck. Merck objected.

Only after Merck had filed a motion for summary judgment did it agree "to describe the disciplinary actions (verbal, written, warnings), if any, . . . taken by [Merck] as to [other] business managers for failure to submit expense reports or follow scheduling for product certification." Given this agreement,

---

[3] Although the deposition transcript does not appear in the record, we rely on Baltodano's counsel's unopposed recounting of the deposition.

Baltodano filed a Rule 56(f) motion, requesting only that the court delay ruling on the summary judgment motion and that it allow Baltodano to supplement his brief once Merck provided the promised information. The court never acted on this motion, and Merck repeatedly and unilaterally pushed back the date that, it said, it would finally comply with the agreement.

Merck never provided the promised information. On August 11, 2008, Baltodano filed a motion to compel or, in the alternative, to follow Rule 16(5) of the Puerto Rico Rules of Evidence and hold that Merck's non-production created a presumption adverse to Merck: that no other managers were disciplined for misconduct comparable to Baltodano's. On August 15, Merck renewed its objection and again refused to provide the information, responding vaguely that "some business managers may have failed [to] comply with certification scheduling due dates; if such were the case, generally, each situation is managed individually." Merck added that there was no other situation quite like Baltodano's, and that a litany of supervisors could not recall whether any other business managers might have committed misconduct.

Following this non-responsive answer, Baltodano sought an extension of time to file a sur-reply to the summary judgment motion and, in short order, filed the sur-reply renewing his argument under Rule 16(5). Eventually, the court denied

Baltodano's motion to compel without comment and then granted Merck's motion for summary judgment. Baltodano filed a motion for reconsideration, which the court promptly denied.

Baltodano appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## Summary Judgment is Inappropriate

We review a district court's grant of summary judgment de novo. Mass. Museum of Contemporary Art Found., Inc. v. Büchel, 593 F.3d 38, 52 (1st Cir. 2010). Summary judgment is appropriate only where the record reflects no genuine issue of material fact and where, with all reasonable inferences drawn in favor of the non-moving party (here, Baltodano), the moving party is entitled to judgment as a matter of law. See Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008). Our law provides plainly that where a plaintiff's case depends on his "ability to secure evidence within the possession of defendants, courts should not render summary judgment because of gaps in a plaintiff's proof without first determining that plaintiff has had a fair chance to obtain necessary and available evidence from the other party." Carmona v. Toledo, 215 F.3d 124, 133 (1st Cir. 2000). Any other rule would encourage defendants "to 'stonewall' during discovery – withholding or covering up key information that is otherwise available to them through the exercise of reasonable diligence." Id. Against this backdrop, we will analyze each of Baltodano's claims.

**Law 80**

Puerto Rico Law 80 requires employers to compensate employees who are discharged without just cause. P.R. Laws Ann. tit. 29, § 185a. Just cause may be founded on, e.g., "repeated violations" of the employer's published "reasonable rules and regulations established for the operation of the establishment," id. § 185b(c); just cause may not be founded on "the mere whim of the employer," id. § 185b. In any event, a discharge is without good cause if its cause does not relate "to the proper and normal operation" of the employer. Id.

Law 80 establishes a burden-shifting scheme. Once an employee has shown only that he was discharged, it is up to the employer "to prove that [the discharge] was justified." Id. § 185k(a); see also Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). Law 80's burden-shifting then allows the employee to rebut any showing of just cause. See Alvarez-Fonseca, 152 F.3d at 28.

There is no question that Baltodano was discharged, so it is Merck's burden to demonstrate just cause. Merck claims the discharge was the result of Baltodano's repeated violations of reasonable company rules and regulations. But here Baltodano, who contends discriminatory animus drove his discharge, cannot make such a rebuttal because he has not "had a fair chance to obtain necessary and available evidence from the other party." Carmona,

215 F.3d at 133.  Indeed, Merck has fought tooth and claw to keep from disclosing certain information <u>even after agreeing to disclose it</u>.

Specifically, to provide a recap (with a little additional detail) on the question of Merck's discipline of other business managers: on May 29, 2008, Vazquez provided a non-answer at deposition; on the same day Baltodano requested supplemental discovery; Merck fought back and the parties held a Rule 26 conference; on June 30 Merck agreed to produce the evidence by July 14; on July 30 Merck unilaterally pushed the date of production back to the first week of August; by August 11 Merck still had not produced the evidence, so Baltodano filed a motion to compel or to establish a presumption adverse to Merck; Merck responded, seeking the court's permission to delay production for another five days; and on August 15 Merck produced its final non-response, making clear that it would produce no more.  At this point the motion to compel was still pending; the court denied the motion without comment on February 18, 2009, and granted summary judgment on March 31, 2009.  Merck has never definitively said that the requested and promised but still-unproduced evidence is unavailable - indeed, Merck's careful documentation of Baltodano's missteps would suggest otherwise.  Instead, it has played at multiple personalities, appearing cooperative one moment and combative the next.

If discovery were to disclose that Merck routinely allowed other business managers to file late expense reports and to delay their product certifications without consequence, then Baltodano's termination could be seen as mere whim, or else (as Baltodano alleges) the result of discriminatory animus rather than any discernible and defensible business motive. Merck's dilatory tactics and failure to abide by its own agreement to produce evidence deprived Baltodano of a fair chance to obtain evidence detailing Merck's treatment of other, similarly situated business managers – evidence which could rebut Merck's claim of just cause dismissal. Under these circumstances summary judgment was inappropriate, so we vacate the judgment in Merck's favor on the Law 80 claim.

**Law 100**

Puerto Rico Law 100 imposes liability on "[a]ny employer who discharges . . . an employee . . . because of his/her . . . [e.g.] national origin." P.R. Laws Ann. tit. 29, § 146. Once an employee makes a preliminary showing that his discharge was without just cause, "Law 100 establishes a rebuttable presumption that the employer has discriminated illegally unless the employer can show that the discharge was justified." Alvarez-Fonseca, 152 F.3d at 27; see also P.R. Laws Ann. tit. 29, § 148. The Puerto Rico Supreme Court has also required Law 100 plaintiffs to produce some evidence of the type of discrimination alleged before the

presumption of discrimination will apply. See <u>Díaz</u> v. <u>Wyndham Hotel Corp.</u>, 155 P.R. Dec. 364, 384 (2001). As a final note, Law 80 and Law 100 employ identical standards for just cause. See <u>Alvarez-Fonseca</u>, 152 F.3d at 28.

We need not delve into a substantive analysis of Law 100 given the procedural posture of this case. There is no question that Merck discharged Baltodano. Whether Merck acted with just cause or with discriminatory animus is a disputed issue, on the merits of which we take no position. However, as we previously noted Baltodano has not yet been given a fair chance to develop the record due to Merck's stonewalling. For this reason, the district court erred in granting summary judgment on the Law 100 claim. Accordingly, we vacate the judgment.

## Defamation

Baltodano cites two distinct sources for his defamation claims: Article II, Section 8 of the Puerto Rico Constitution and Article 1802 of the Puerto Rico Civil Code. Article II, Section 8 protects an individual's right to be free from "abusive attacks on his honor, reputation and private or family life." Article 1802 provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obligated to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. Although the complaint is styled such that a separate claim stems from each source, we have previously recognized that both are proper sources

-11-

of what is essentially a defamation action in Puerto Rico, and this is how the briefs treat the issue. See Aponte v. Calderón, 284 F.3d 184, 197 (1st Cir. 2002) (also listing P.R. Laws Ann. tit. 32, §§ 3141-49 as a third source). "In interpreting these various sources of law, the Puerto Rico Supreme Court has explicitly said that Puerto Rico law on [defamation] follows the common law tradition." Id.; see also Villanueva v. Hernández Class, 1991 WL 735303 (P.R.), 128 P.R. Dec. 618, 646 (1991). Thus, a private plaintiff asserting a defamation claim against a private defendant must show that the defendant (1) made a false statement, (2) in a negligent manner, (3) causing actual damage to the plaintiff. Villanueva, 128 P.R. Dec. at 647-48.

Frankly, neither party has addressed the defamation claim with much rigor; both largely assume that as the other claims go, so goes this one. This is troubling, but the record reveals a reason for the underdevelopment of the parties' arguments on defamation: the district court issued summary judgment on this claim sua sponte. Merck asked for summary judgment only on "certain counts" and didn't list defamation as one of them[4]; Baltodano specifically pointed out in his opposition brief that

---

[4] Merck did ask for summary judgment on a generic negligence (or "Damage") claim, to the extent one might be found in the complaint; context, however, indicates that Baltodano's Article 1802 claim is based not generically on negligence but specifically on defamation. As we have already mentioned, this is an appropriate use of Article 1802.

Merck had not attacked the defamation claim; and Merck did not address the issue in its reply brief. The district court took up the issue of its own accord, without any evident prior warning to the parties, and kicked the claim to the curb as "boilerplate." This was procedurally premature – the issue had not been briefed, and neither party had presented evidence. See Fed. R. Civ. P. 56(f) (only "[a]fter giving notice and a reasonable time to respond" and "identifying for the parties material facts that may not be genuinely in dispute" may the court consider, let alone issue, summary judgment sua sponte). As there was no motion for summary judgment on the defamation claim, the district court should not have granted summary judgment on that claim. We vacate that judgment.

**Breach of Contract**

The parties agree that the valid employment contract between them provides for stock options and also that it cancels those stock options in the case of termination resulting from "deliberate, willful or gross misconduct." If Baltodano's firing was without just cause, then he remains contractually entitled to his stock options. Because Baltodano did not have a fair chance to obtain evidence supporting his claim that he was discharged without just cause, the district court erred in granting summary judgment to Merck on the breach of contract claim. We vacate that judgment.

## Conclusion

Because the district court granted Merck's motion for summary judgment before Baltodano had a fair chance to obtain discovery and develop the record (and improperly granted summary judgment to Merck on the defamation claim when no motion had been made), we vacate the judgment and remand for further proceedings. Costs are taxed against Merck, Sharp & Dohme (I.A.) Corp.