# United States Court of Appeals
## For the First Circuit

No. 11-1617

CESAR I. CRUZ; JOSE I. LASANTA; MARCELO DIAZ,

Plaintiffs, Appellants,

JANE DOE; JANE DOE 1; JANE DOE 2;
CONJUGAL PARTNERSHIP LASANTA-DOE 1;
CONJUGAL PARTNERSHIP CRUZ-DOE;
CONJUGAL PARTNERSHIP DIAZ-DOE 2,

Plaintiffs,

v.

BRISTOL-MYERS SQUIBB COMPANY, PR, INC.;
BRISTOL-MYERS SQUIBB MFG., INC.;
BMS SEVERANCE PLAN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Frank E. Laboy Blanc on brief for appellants.
Lourdes C. Hernández-Venegas, Ana B. Rosado-Frontanés, and
Schuster Aquiló LLP on brief for appellees.

November 7, 2012

**LIPEZ, Circuit Judge**.  After they were fired from their jobs, appellants Cesar Cruz, Jose Lasanta, and Marcelo Diaz filed suit in federal district court against their former employer, appellee Bristol-Myers Squibb Manufacturing Company ("Bristol-Myers"), and against the severance plan established by Bristol-Myers pursuant to the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, appellee BMS Severance Plan. The district court granted appellees' motion for summary judgment, and appellants now challenge that ruling, as well as a number of the district court's other orders.  Discerning no error, we affirm.

**I.**

**A.  Factual Background**

In 2003, Bristol-Myers began winding down operations at the multi-building site where Cruz had worked as a mechanic since 1993.  By letter, Bristol-Myers notified Cruz on July 29, 2003, that he would receive a cash bonus upon discharge, in addition to any severance package for which he might be eligible.  The letter explained that the amount of the bonus depended on the timing of the discharge: if Cruz's employment ended when normal operations in Building 5 stopped, he would get three months' salary; if he left when operations in Buildings 2 and 29 stopped, he would get six months' salary; if he was dismissed when sterile operations in Building 5 stopped, he would get nine months' salary.

As part of the winding-down process, Bristol-Myers developed a ranking system to determine the order in which employees occupying the same positions would be terminated. The ranking system took into account both professional skills and seniority within the company. In 2007, as operations in Building 2 were coming to a halt, Bristol-Myers decided to terminate two of its four mechanics. Among the mechanics, Cruz was ranked third in skills and fourth in seniority. On June 22, 2007, he was informed that there would be a reduction in force that would result in his discharge on August 29, 2007. At the time, Cruz was forty-two years old. The two mechanics who were retained were, respectively, fifty years old and forty-three years old. No one was hired to replace Cruz, and he was paid a cash bonus of six months salary.

Prior to Cruz's dismissal, Bristol-Myers had adopted a severance plan, pursuant to ERISA, to assist employees who were being downsized. Under the plan, in exchange for signing a general release of any claims against Bristol-Myers, Cruz would have been eligible for a severance package of $47,833. Cruz never signed the release and, as a result, never received a severance package.

## B. Procedural History

Appellants' complaint was filed on April 11, 2008, asserting federal claims under ERISA, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, the Worker

Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §§ 2101-2109, and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161-1169, which amended ERISA. The complaint also asserted a common-law breach of contract claim, as well as an employment discrimination claim under the Puerto Rico Anti-Discrimination Act (also known as Law 100), P.R. Laws. Ann. tit. 29, §§ 146-151, and an unjustified dismissal claim under Puerto Rico Law 80, P.R. Laws Ann. tit. 29, §§ 185a-m.

Because the allegations in the complaint were difficult to decipher, appellees filed a motion for a more definite statement. See Fed. R. Civ. P. 12(e). On July 11, 2008, appellants submitted a new complaint raising identical claims, which appellees answered. After reviewing the new complaint, the district court tentatively determined that there was no basis for appellants to be joined together as plaintiffs in a single lawsuit. See Fed. R. Civ. P. 20(a)(1). Hence, the district court ordered appellants to show cause why Diaz and Lasanta should not be severed from the case, leaving Cruz (as the first named plaintiff) to proceed alone. Appellants responded that joinder was proper because their individual rights to relief arose from the same occurrence - namely, a large-scale reduction in force at the Bristol-Myers site where they had worked.

On February 25, 2009, before the district court had conclusively ruled on the propriety of joinder, appellants filed a

motion seeking to have their suit certified as a collective action under the ADEA. See 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216(b)); see also Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) ("Congress has stated its policy that ADEA plaintiffs should have the opportunity to proceed collectively."). On January 28, 2010, the district court issued an order severing Diaz and Lasanta and dismissing their claims without prejudice on the ground that appellants had failed to establish that a question of law or fact common to all of them would arise in the case. See Fed. R. Civ. P. 20(a)(1)(B). The district court then declared the motion seeking certification of appellants' suit as a collective action to be moot. See Cruz v. Bristol Myers Squibb Co. P.R. Inc., 264 F.R.D. 22 (D.P.R. 2010).

On February 10, 2010, the district court issued a scheduling order informing the remaining parties that any amended pleadings had to be filed by March 9, 2010. After the deadline passed, Cruz filed a "corrected complaint" on April 26, 2010, which deleted his ADA, WARN, and COBRA claims. Appellees answered the corrected complaint on May 4, 2010, and discovery began. On June 13, 2010, Cruz moved to amend the complaint in order to augment his ADEA and Law 100 claims with information unearthed during discovery. The district court denied his motion without comment. On December 13, 2010, after discovery had concluded, Cruz once more moved to amend the complaint for the purposes of reinforcing his

existing claims, adding an allegedly indispensable party (an unidentified successor-in-interest to Bristol-Myers), and rejoining Diaz as a plaintiff. The motion was denied, again without comment.

On January 11, 2011, appellees moved for summary judgment, affixing to their motion a statement of uncontested facts ("SUF"), as required by the district court's rules. See D.P.R. Civ. R. 56(b). On January 23, 2011, Cruz opposed the summary judgment motion but neglected to submit a counter-statement along with his opposition admitting, denying, or qualifying each fact in the SUF. See D.P.R. Civ. R. 56(c). Instead, he submitted a short narrative outlining his view of the case. Deeming admitted the facts in appellees' SUF, see D.P.R. Civ. R. 56(e), the district court granted appellees' motion for summary judgment, see Cruz v. Bristol Myers Squibb Co. PR, Inc., 777 F. Supp. 2d 321, 340 (D.P.R. 2011). This appeal followed.

## II.

### A. Party Joinder

We begin our analysis by considering whether the district court abused its discretion in severing Diaz and Lasanta. See Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997) (reviewing for abuse of discretion). Multiple plaintiffs may join together in a single action if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

-6-

occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)-(B). If both elements of this test are not satisfied, "a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance. In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs . . . ." Coughlin, 130 F.3d at 1350 (citations omitted).

In this case, appellants made no effort to demonstrate that any common question of law or fact would arise. It appears that each appellant lost his job under different circumstances and each has distinct legal claims against appellees. Although the rules governing party joinder are construed liberally for the sake of convenience and economy, see Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375-76 (9th Cir. 1980), we discern no abuse of discretion in the district court's decision to sever Diaz and Lasanta and dismiss their claims without prejudice.

## B. Certification as a Collective Action

For substantially the same reasons, the district court did not abuse its discretion in declining to certify appellants' suit as a collective action under the ADEA. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001) (reviewing for abuse of discretion). Employees seeking to bring a

collective action under the ADEA must establish that they are similarly situated. See 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216(b)); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216-17 (11th Cir. 2001). This requirement is even less stringent than the test for party joinder, see Grayson v. K Mart Corp., 79 F.3d 1086, 1095-96 (11th Cir. 1996), but it still has teeth, see Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008). The modest factual showing that must be made "cannot be satisfied simply by unsupported assertions," Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation marks omitted), such as those in this case. Appellants' barebones motion for certification stated only that appellants are "similarly situated and victims of a single decision, policy or plan" to reduce Bristol-Myers' workforce. These conclusory allegations were insufficient to warrant the certification of a collective action.

**C. Amendments to the Complaint**

There also was no abuse of discretion in the denial of Cruz's belated motions to amend his complaint. See Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 326 (1st Cir. 2008). Cruz argued his motions under Rule 15's liberal amendment policy, which "provides that . . . '[t]he court should freely give leave when justice so requires.'" Id. at 327 (quoting Fed. R. Civ. P. 15(a)(2)). Because the motions to amend came after the deadline

established by the district court's scheduling order, however, they could be granted only upon a showing of good cause, see O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154-55 (1st Cir. 2004); Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment." O'Connell, 357 F.3d at 155.

Partly due to his misapprehension of the correct legal standard, Cruz made minimal effort to demonstrate that good cause justified permitting an amendment. Cruz filed his first motion to amend three months after the deadline set forth in the district court's scheduling order. The motion sought to add factual allegations regarding "a statement . . . made in writing by plaintiff's immediate supervisor obtained during our efforts to prepare for the case and to comply with various information requests put forth by [defendants]." This document was evidently in plaintiff's possession, raising questions as to why it abruptly surfaced over two years after he initiated this litigation. Counsel claimed that their efforts to obtain this evidence were complicated by Cruz's move to Florida and ill-defined health problems. These cursory explanations do not demonstrate why this supposedly crucial piece of information could not have been uncovered earlier with appropriate diligence.[1]

_____

[1] The timing of Cruz's first motion to amend was puzzling, since by that point it was unlikely that he would face further motions to dismiss. The value of adding factual support for his

Cruz's second motion to amend came nine months after the district court's deadline.  This motion similarly failed to offer sufficient explanation for the delay in seeking amendment.  Cruz never identified the allegedly indispensable party he sought to add as a successor-in-interest to Bristol-Myers, and he failed to explain why he delayed until after discovery had ended to seek to rejoin Diaz as a plaintiff, despite having already filed three versions of his complaint.  See O'Connell, 357 F.3d at 155 ("Such a long and unexplained delay vindicates the district court's conclusion that plaintiffs were not diligently pursuing this litigation."); Leary v. Daeschner, 349 F.3d 888, 907 (6th Cir. 2003) (affirming denial of leave to amend where "[p]laintiffs gave the district court no excuse for their considerable delay").

"A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) (internal quotation marks omitted).  Cruz's failure to show his diligence in seeking an amendment doomed this motion as well.

---

claims was therefore limited.  Moreover, Cruz could not hope to evade summary judgment by relying only on his complaint.  See Ruiz-Rosa v. Rullán, 485 F.3d 150, 156 (1st Cir. 2007) ("Allegations made in a plaintiff's complaint, standing alone, are not enough to oppose a properly supported motion for summary judgment.").

**D. Summary Judgment**

We review the grant of a motion for summary judgment de novo. See Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 20 (1st Cir. 2012). Because Cruz did not properly controvert appellees' SUF, the district court deemed the facts therein admitted, as was its prerogative. See D.P.R. Civ. R. 56(e); Ríos-Jiménez v. Principi, 520 F.3d 31, 38-39 (1st Cir. 2008). We therefore confine our analysis to those facts, see Ríos-Jiménez, 520 F.3d at 39, as summarized above and described in greater detail in the district court's decision, see Cruz, 777 F. Supp. 2d at 331-34.

**1. The ADEA Claim**

Under the ADEA, it is unlawful for an employer to discharge an employee because of the employee's age. See 29 U.S.C. § 623(a)(1); Bonefont-Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 123 (1st Cir. 2011). To prevail on an ADEA claim, an employee must establish by a preponderance of the evidence that age was the but-for cause of his or her termination. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009); Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 446 (1st Cir. 2009). "Where, as here, the employee lacks direct evidence, we utilize the burden-shifting framework developed by the Supreme Court to facilitate the process of proving discrimination." Bonefont-Igaravidez, 659 F.3d at 123 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)); see also Vélez, 585 F.3d at 446-47 & n.2. In the context

-11-

of a reduction in force, the first step of this framework requires the employee to make out a prima facie case of discrimination by showing that (1) he or she was at least forty years old at the time of discharge; (2) he or she was qualified for his or her position; (3) he or she was fired; and (4) his or her employer either did not treat age neutrally or retained younger employees in the same position. See Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination, see id., which the employee may rebut by showing that the proffered reason is "merely a pretext for impermissible age discrimination," id. at 1092.

In this case, there is no dispute that Cruz satisfied the first three requirements of a prima facie discrimination case. However, there is no evidence that Bristol-Myers either failed to treat age neutrally in deciding to discharge Cruz or retained younger employees in his position. The record plainly shows that Cruz was laid off pursuant to a ranking system that considered only his professional skills and seniority, and the two mechanics who were retained were both older than Cruz. Hence, no prima facie case was established. See Goncalves v. Plymouth Cnty. Sheriff's Dep't, 659 F.3d 101, 105-07 (1st Cir. 2011).

## 2. The Law 100 and Law 80 Claims

The Law 100 claim fails for similar reasons. Under Law 100, "a plaintiff has the initial burden to establish a prima facie case by (1) demonstrating that he was actually or constructively discharged, and (2) alleging that the decision was discriminatory." Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (internal quotation marks omitted). After the plaintiff makes this "rather undemanding" showing, the burden of persuasion then shifts to the employer to show that it had just cause for the employee's termination. Id.; see also Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 & n.8 (1st Cir. 2001) (explaining that making out prima facie case under Law 100 requires less than what plaintiff must bring forward to satisfy prima facie showing under ADEA). If the employer can establish just cause, then, "as under the ADEA, the burden of persuasion returns to the employee to show that the employer's decision was motivated by age discrimination." Velázquez-Fernandez, 476 F.3d at 11 (internal quotation marks omitted). "Ultimately . . . the employee is faced with the same burden of persuasion as an employee bringing suit under the ADEA." Id.

As the Puerto Rico Supreme Court has explained, because Law 100 does not define what constitutes just cause, guidance is drawn from Law 80. See Báez García v. Cooper Labs., Inc., 20 P.R. Offic. Trans. 153, 164 (P.R. 1987); see also Baltodano v. Merck,

-13-

Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 41-42 (1st Cir. 2011) ("Law 80 and Law 100 employ identical standards for just cause."). According to Law 80, a dismissal is for just cause if it results from the "[f]ull, temporar[y] or partial closing of the operations of the establishment." P.R. Laws Ann. tit. 29 § 185b(d).

Hence, even assuming that Cruz made the "minimal showing" required to make out a prima facie case under Law 100, Baralt, 251 F.3d at 16, Bristol-Myers has shown that there was just cause for his dismissal, since the company was engaged in a large-scale reduction in force. Defendant has adduced evidence showing that Cruz's layoff took place as a result of a neutrally-applied ranking system that took into account both his seniority and skill level. Cruz has not rebutted this showing by demonstrating that his termination was, in fact, motivated by age discrimination. Indeed, any inference of discrimination is severely undermined by the fact that the two employees who were retained after the layoff were older than Cruz.

Likewise, the Law 80 claim fails. Law 80 requires an employer to make severance payments to an employee who is discharged without just cause. See P.R. Laws. Ann. tit. 29, § 185a; see also Baltodano, 637 F.3d at 41-42. It, too, employs a burden-shifting scheme. See id. at 42. Once an employee has established that he or she was discharged, it is up to the employer to show that the discharge was for just cause. See id. The

-14-

employee then must rebut this showing. See id. As we have already said, Bristol-Myers showed that there was just cause for Cruz's dismissal, and Cruz has not rebutted this showing.

### 3. The ERISA and Breach of Contract Claims

The final two claims - the ERISA claim and the breach of contract claim - fail for entirely different reasons. The ERISA claim alleges that Cruz was denied the severance package due to him under the severance plan. This claim is barred because, as Cruz concedes, he neglected to exhaust his administrative remedies prior to filing suit, as required under ERISA. See Madera v. Marsh USA, Inc., 426 F.3d 56, 61-62 (1st Cir. 2005). Cruz attempts to circumvent this bar by arguing that the severance plan was not a bona fide ERISA plan and, therefore, that the exhaustion requirement is inapposite. However, this argument is woefully undeveloped. It is not supported by reference to either legal authority or evidence in the record. As a result, we deem it waived. See McDonough v. Donahoe, 673 F.3d 41, 49 n.14 (1st Cir. 2012).

The breach of contract claim alleges that the July 29, 2003 letter informing Cruz that he would receive a cash bonus upon discharge constituted a contract that Bristol-Myers breached by paying him less than the agreed amount. Even if the letter was a contract, there is no evidence that Bristol-Myers failed to perform. The letter described a three-tiered bonus structure, with

-15-

the bonus amount determined by the timing of Cruz's departure. The letter clearly stated that, if Cruz was dismissed when operations in Buildings 2 and 29 stopped, he would receive six months' salary. That is precisely what happened.

### III.

In sum, there was no error in the management of this case or the grant of appellees' motion for summary judgment. The judgment of the district court is affirmed.

So ordered.