# United States Court of Appeals
## For the First Circuit

No. 22-1377

JOSE A. RIVERA-PINA; DENISE MALAVE-FONSECA; ELIZABETH
BRUNO-ORTEGA; EUNICE A. ROSARIO-ABREU; GUILLERMO E. DE LA
CRUZ-ABREU; IRIS N. FLORES-CARABALLO; JAVIER
RODRIGUEZ-RODRIGUEZ; JUAN C. ROMANACCE-RODRIGUEZ; LISBETH DE
LEON-MARQUEZ; LUZ J. GARCIA-ORTIZ; MARISELA FIGUEROA-VEGA;
RICHARD RIVERA-CANALES; ROLANDO A. LOPEZ-SOSA; RUBEN
RODRIGUEZ-JIMENEZ; HOWARD DE LEON-RODRIGUEZ; EMILIO A.
GABINO-SEVERINO; FRANCIS J. BROWN-RIVERA; GRACELYN PROCTOR; LUIS
F. MALDONADO-FLORES; MARIBEL MENDOZA-MUNAYCO; RAFAEL
LUGO-CINTRON; RICARDO RIVAS-PIMENTEL; SALVADOR BAEZ-PEREZ; SARA
MUNIZ-CARASQUILLO; WANDA M. ORTIZ-OJEDA; AUREA E.
VARGAS-RODRIGUEZ; CARLOS J. DEL VALLE-MALDONADO; CLAUDIO
GARCIA-FEBLES; DANIEL NIEVES-MUNOZ; DAVID DE JESUS-SANCHEZ;
DOLORES RODRIGUEZ-FELIZ; BRAULIO DE LEON-RODRIGUEZ; BELGICA
BAUTISTA; SANTIAGO PEREZ-CRUZ; NOEMI MATOS-RIVERA; MYRIAM
GARCIA-VIERA; MATEO CEPEDA-ROMERO; LUIS FERNANDEZ-SOUFFRON; LISA
Y. SOTO-PENA; LETTY ZAYAS-MATTA; JOSE RIVERA-RIVERA; JESUS G.
CRESPO-VARGAS; FELIX O. RAMOS-RIVERA; ENRIQUE ROSA-ESQUILIN;
AMERICA SORIANO-GONZALEZ; DAVID ROMAN-RIVERA; EDGARDO
JIMENEZ-QUINONES; BERNARD I. SANCHEZ-BISBAL; CATHERINE
ANDINO-SANCHEZ; DIONISIO DIAZ-SUAREZ; EDUVIGIS
HERNANDEZ-ALBERTO; GERARDO MERCED-OTERO; ISAAC V. LOPEZ-DIAZ;
JAVIER MURATI-ROSA; JOSE A. GONZALEZ-RIOS; MARIA RONDON; MARIA
SERRANO-RIVERA; NEYDIMAR OQUENDO-RODRIGUEZ; VANESSA
RIVERA-CARRION; WILLIAM A. MERCED-NARVAEZ; YESENIA MONTES-COLON;
SAMUEL TORRES-PEREZ; ROMAN HERRERA-GONZALEZ; RAUL DELGADO-PAGAN;
CARLOS M. NINA-MORBAN; DAVID OTERO-RODRIGUEZ; ESTEBAN G.
RIOS-SANTANA; JAIME R. CEPEDA-CRUZ; MANUEL DE LA ROSA-MERAN; ANA
S. TORO-ORTIZ; CARMEN F. BONILLA-VALLEJO; EDWIN
VAZQUEZ-GONZALEZ; JAIME MOUX-GONZALEZ; JOSE M. MARTINEZ-TORRES;
MARTA PACHECO-ARROYO; ANGELO CUEVAS TAPIA; ANNETTE
MARCANO-BETANCOURT; ZAIDA M. CLAUDIO-TORRES; CARLOS A.
DIAZ-MUNIZ; ANGEL L. SEMIDEY-SEPULVEDA; MAGDALIS GONZALEZ; CAROL
RODRIGUEZ-SANCHEZ; CESAR R. MERCED-TORRES; CARLOS R.
ARROYO-VEGA; EIMY CARRION-MARQUEZ; CRISTIAN CRISOSTOMO; JENNIFER
MARRERO-COLON; DANNY A. GONZALEZ; JOSE L. ESCOBAR; EDWIN E.
SANCHEZ-HENRIQUEZ; MARIA D. LOPEZ-COSME; ELIZABETH
RODRIGUEZ-ACOSTA; MARIA E. ACEVEDO-RIVERA; ERNESTO MIDDELHOF;
MIKE SOSA; JAMES HIGGINSHOTHAM-PADILLA; MILAGROS RIVERA-MERCADO;

JENNIFER RODRIGUEZ-MARTINEZ; MILTON GINES-AYUSO; JOSE A. FIGUEROA-ENCARNACION; WILLIAM IZQUIERDO; JOSE A. VEGA-CRUZ; JUNIOR J. CEDANO NOVA; YAZMIN PAGAN LORIGA; CARMEN L. RUIZ; CHRISTIAN SANTIAGO RODRIGUEZ; ELSIE ALVAREZ RODRIGUEZ; GIOVANNA VARGAS; GLENDALY HERNANDEZ DIAZ; JEREMY BAPTISTE; JESSICA LUCAS MUOZ; JUAN G. BORRERO-ESCALERA; LEOMARY MARTINEZ MARTINEZ; MIGDALIA NIEVES FIGUEROA; RAMONA SANTANA ACOSTA; WILFREDO RIVERA VARGAS; AMARILIS ORTIZ PACHECO; CARLOS J. FONTANEZ DE JESUS; IRAIDA RODRIGUEZ SOTO; JOCELYN DIAZ MELENDEZ; JOSE M. SANCHEZ AGOSTO; RICHARD A. CHONG VALDES; YAJAIRA VELEZ GUZMAN; ALEXIER RAMOS MATOS; MIGUEL A. CRUZ MEDINA; NUBIA M. POLANIA MARTINEZ; EDUARDO MARTINEZ RIVERA; JENNIFER GONZALEZ MARTINEZ; ILEANA ACEVEDO; JUAN C. LOPEZ RIVERA; NESTOR MALDONADO CRUZADO; ATREYU RIVERA OSORIO; LIZALLI CACERES SOLIS; WILFREDO GARCIA BOY; YANIRA DAVILA GONZALEZ; ANTHONY VARGAS MEDERO; AMANDA BERRIOS DIAZ; EVA J. PESQUERA RODRIGUEZ; MISAEL J. PAGAN; ZULIN VILLANUEVA ORELLANO; CAMILLE OQUENDO; FELIPE J. NIEVES SANTOS; NOMAR MARQUEZ ARROYO; SAMUEL RIVERA LEBRON; YANEURI RESTITUYO; BARBARA CANALES MALDONADO; EDWIN RAMOS SERRANO; JAFED ESCOBAR AYALA; CARLA C. MONTALVO ANABITARTE; MICHAEL DIAZ COLON; ZINNIA JIMENEZ; GIOVANNI MARTINEZ RIOS; LUIS A. ALICEA SANTOS; YAMILLIE MELENDEZ RIVERA,

Plaintiffs, Appellants,

v.

LUXURY HOTELS INTERNATIONAL OF PUERTO RICO, d/b/a Ritz-Carlton Hotel Spa & Casino,

Defendant, Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

———————————

Before

Barron, Chief Judge,
Montecalvo and Rikelman, Circuit Judges.

———————————

Jorge L. Marchand Heredia for appellants.
Anabel Rodríguez-Alonso, with whom Corporate Legal Advisors,

L.L.C., <u>Ivy Mercado-Ramos</u>, and <u>Raquel Román-Morales</u> were on brief, for appellee.

May 3, 2024

**BARRON**, **Chief Judge**.  The appellants are former employees of Luxury Hotels International of Puerto Rico, d/b/a Ritz-Carlton Hotel Spa & Casino ("Ritz-Carlton"), which operated a hotel in Isla Verde, Puerto Rico.  They are challenging a grant of summary judgment to Ritz-Carlton on their claims alleging that Ritz-Carlton violated federal and Puerto Rico law in connection with Ritz-Carlton's discharge of the employees after the hotel closed in the wake of Hurricanes Irma and Maria.  We affirm.

**I.**

Of the several claims that the employees originally brought in a Puerto Rico court against Ritz-Carlton, only two are at issue in this appeal.  Those claims relate to the following facts, which are not in dispute.

Hurricane Irma struck Puerto Rico on September 6, 2017, and Hurricane Maria struck Puerto Rico on September 19 and 20, 2017.  Ritz-Carlton closed the hotel to the public on September 20, 2017, and thereafter only a limited group of its employees performed any work at the property.

On November 17, 2017, Ritz-Carlton gave individual written notices to 699 of its employees stating: "you[] will be laid off from your jobs" effective retroactively starting on October 6, 2017, and "remain[ing] in effect as [Ritz-Carlton] continue[s] evaluating the extent of the damages caused by the natural disasters and until [Ritz-Carlton is] able to determine

when the Hotel will reopen its doors and continue with its normal operations."  On March 19, 2018, Ritz-Carlton notified the employees that their employment would be terminated permanently on April 30, 2018.

The employees then sued Ritz-Carlton in a Puerto Rico court, alleging violations of Puerto Rico and federal law. Ritz-Carlton removed the case to the United States District Court for the District of Puerto Rico and, after discovery had concluded, filed a proposed statement of uncontested facts and moved for summary judgment.

The employees objected to the proposed statement of uncontested facts as well as to the motion of summary judgment, and the employees also filed a motion to strike two of Ritz-Carlton's exhibits.  After further motion practice by the parties, the District Court granted summary judgment to Ritz-Carlton on all the employees' claims, denied the employees' motion to strike Ritz-Carlton's exhibits, and dismissed the case. Rivera-Pina v. Luxury Hotels Int'l of P.R., No. 18-1719 (PAD), 2022 WL 993639 (D.P.R. Mar. 31, 2022).

Among the claims for which the District Court granted summary judgment are the two that are at issue in this appeal. Those claims allege violations of, respectively, Puerto Rico Law 80 of 1976, and the federal Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §§ 2101-09.

At the relevant time, Law 80 provided that certain employees who are "wrongfully terminated" are entitled to statutorily defined amounts of severance pay unless there was "[j]ust cause for discharge." Labor Transformation and Flexibility Act, No. 4, secs. 4.3-4.4, §§ 1-2, 2017 P.R. Laws 82, 133-35. According to the employees' complaint, Ritz-Carlton violated Law 80 by terminating the employees "without just cause, and [Ritz-Carlton] did not pay the indemnity [that the employees] were entitled to receive." In support of the claim, the complaint alleged that the employees had been "informed that they were being laid off because the company was going to cease operations" but that "said closing of operations was not a bona fide one and was done with the intention of discriminating against plaintiffs because of their age and seniority in order to bring younger employees and [workers] with less seniority to perform the duties performed by [plaintiffs]." The complaint requested the statutorily defined amounts of severance pay to which the employees claimed they were entitled.

The WARN Act provides in relevant part that an "employer shall not order a . . . mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each affected employee." 29 U.S.C. § 2102(a)(1). The WARN Act defines "mass layoff" in relevant part as:

(3) . . . a reduction in force which--

> (A) is not the result of a plant closing; and
>
> (B) results in an employment loss at the single site of employment during any 30-day period for--
>
>> (i)
>>> (I) at least 33 percent of the employees (excluding any part-time employees); and
>>>
>>> (II) at least 50 employees (excluding any part-time employees); or
>>
>> (ii) at least 500 employees (excluding any part-time employees).

29 U.S.C. § 2101(a)(3). The WARN Act further defines "employment loss" in relevant part as, "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period." 29 U.S.C. § 2101(a)(6). In other words, under the WARN Act, if a layoff does not exceed six months, then the "reduction in force" has not "result[ed] in an employment loss" and so is not a "mass layoff" that gives rise to an obligation under the WARN Act to provide notice. However, the WARN Act further provides:

> A layoff of more than 6 months which, at its outset, was announced to be a layoff of 6 months or less, shall be treated as an employment loss under this chapter unless--

- 7 -

(1) the extension beyond 6 months is caused by business circumstances (including unforeseeable changes in price or cost) not reasonably foreseeable at the time of the initial layoff; and

(2) notice is given at the time it becomes reasonably foreseeable that the extension beyond 6 months will be required.

29 U.S.C. § 2102(c).

In addition, the WARN Act provides the following:

(a) Civil actions against employers

(1) Any employer who orders a plant closing or mass layoff in violation of section 3 of this Act shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for--

(A) back pay for each day of violation at a rate of compensation not less than the higher of--

(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or

(ii) the final regular rate received by such employee; and

(B) benefits under an employee benefit plan described in section 3(3) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1002(3)) . . . .

Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

29 U.S.C § 2104(a)(1).

However, the WARN Act then goes on to provide:

(2) The amount for which an employer is liable . . . shall be reduced by--

(A) any wages paid by the employer to the employee for the period of the violation;

(B) any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation; and

(C) any payment by the employer to a third party or trustee (such as premiums for health benefits or payments to a defined contribution pension plan) on behalf of and attributable to the employee for the period of the violation.

29 U.S.C. § 2104(a)(2).

The employees' complaint alleged that Ritz-Carlton violated the WARN Act by failing to give them sufficient notice prior to their ultimate termination. In that regard, the complaint alleged that the "termination was effective on April 30, 2018, but the layoff for closing of operations was notified on March 19, 2018, in other words, 41 days prior to the effectiveness of the termination." Thus, according to the complaint, the employees were "entitled to be compensated by the payment of sixty (60) days of salaries and benefits" as well as attorneys' fees and costs.

The District Court granted summary judgment to Ritz-Carlton on the Law 80 claim on the ground that the record

established, as a matter of law, that Ritz-Carlton had terminated the employees' employment with "just cause." Rivera-Pina, 2022 WL 993639, at *8-9. The District Court then granted summary judgment to Ritz-Carlton on the WARN Act claim on the ground that the record established, as a matter of law, there had been no WARN Act violation and that, even if there had been, various payments that Ritz-Carlton had made to the employees would completely offset Ritz-Carlton's monetary liability. Id. at *12.

The employees timely appealed.[1]

## II.

"We review a district court's grant of summary judgment de novo." González-Cabán v. JR Seafood Inc., 48 F.4th 10, 14 (1st Cir. 2022). "In considering the arguments on appeal, we must construe the record in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor." Id. (cleaned up). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting

---

[1] Ritz-Carlton argues on appeal that the employees' brief violates Federal Rule of Appellate Procedure 28(a)(6) because the employees "did not cite a single reference to parts of the record to sustain their contentions," and Ritz-Carlton contends that this "violation alone warrants affirming the dismissal." The employees do not make any argument rebutting this contention. However, we do not decide here whether there has been such a violation or, if so, whether the violation alone would warrant affirming, because we conclude that the merits of the case warrant an affirmance.

Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 53, 62 (1st Cir. 2020)).

## III.

We start with the employees' challenge to the District Court's grant of summary judgment to Ritz-Carlton on their Law 80 claim. The employees recognize that they cannot succeed on this claim if the record shows that Ritz-Carlton terminated their employment for "just cause." In ruling that the record established as a matter of law that the termination was for "just cause," the District Court explained that it was "uncontested" that the hotel "closed its doors to the public on September 20, 2017[,] and has not reopened for business." Rivera-Pina, 2022 WL 993639, at *8. The District Court then went on to conclude that the "closing constitutes just cause for [the employees'] discharge." Id.

The employees do not suggest that there is any factual dispute "that the Hotel has been closed." They also acknowledge that, "as a general rule, the owner [of the hotel] has the authority to do that." Consistent with that understanding, Law 80 defined "just cause" at the relevant time as "such reasons that affect the proper and regular operations of an establishment, including . . . [the f]ull, temporary, or partial closing of the

- 11 -

operations of the establishment."[2]  Id. at *8 (emphasis added);

see also Labor Transformation and Flexibility Act, sec. 4.4, § 2.

The employees appear to be premising their challenge on

appeal on the ground that the "general rule" that a termination of

employment based on a closing is for "just cause" does not apply

to this case because a reasonable trier of fact could find on this

record that Ritz-Carlton closed this hotel without "just cause."

In that regard, the employees argue that "there is absolutely no

admissible evidence whatsoever in the record of the alleged damages

suffered by the Hotel because of the Hurricanes."  They further

contend that there is "contradictory evidence on the record because

all the [hotel] officials that testified on depositions said they

never saw a damages report and don't even know whether they existed

or not" and that Ritz-Carlton "was misrepresenting the real reason

for the closing of the hotel because in the following months

construction crews . . . were working for the following months

demolishing rooms in the hotels that were not damaged by the

Hurricanes."  In consequence, the employees argue, there were "many

_____

[2] The text from Law 80 that the District Court quoted was in the statute at the time of Ritz-Carlton's alleged violation. See Labor Transformation and Flexibility Act, sec. 4.4, § 2.  In 2022, Puerto Rico amended the statute by deleting the phrase, "such reasons that affect the proper and regular operations of an establishment," but retaining "[f]ull, temporary, or partial closing of the operations of the establishment" as a sufficient condition for deeming an employee to "have been terminated for cause."  Act No. 41-2022, sec. 17, § 2, 2022 P.R. Laws.

issues of fact to be resolved at trial" concerning the real reason for the hotel's closure.

These arguments, however, are all premised on the contention that, as the employees put it, if "you don't provide a justified reason for the closing you have to pay severance under" Law 80. But the text of Law 80 does not support the proposition that, even when the termination was based on the closing, the closing -- rather than the termination of employment -- had to be for "just cause." And the employees neither develop an argument in support of a contrary conclusion nor cite authority under Puerto Rico law for our reaching one. We thus see no basis for concluding that the District Court erred in ruling that the "inquiry is whether there is just cause for the discharge," and that "the full, temporary or partial closing of operations is just cause," such that "[o]nce that just cause is shown, the Law 80 inquiry ends." Rivera-Pina, 2022 WL 993639, at *9 (emphasis added); see also Cruz v. Bristol-Myers Squibb Co., PR, Inc., 699 F.3d 563, 571-72 (1st Cir. 2012) (explaining that an employer "show[s] that there was just cause for . . . dismissal" under Law 80 simply when it shows that there was a "[f]ull, temporar[y] or partial closing of the operations of the establishment" such as when the employer "was engaged in a large-scale reduction in force").

In light of our conclusion on this score, it follows that we would have no basis for holding that the District Court

- 13 -

erred in determining that the employees' employment was terminated for "just cause," even if we were to assume that there were a genuine issue of material fact about why the hotel was closed.[3] For, while the employees assert in their recitation of the facts that the "problem was that [Ritz-Carlton] was misrepresenting the real reason for the closing of the hotel because in the following months construction crews . . . were working for the following months demolishing rooms in the hotels that were not damaged by the Hurricanes," they develop no argument on appeal (nor did they develop any such argument below) that the termination of their employment was not based on the closing. Their only developed argument is that there is a genuine issue of material fact as to whether the closing itself was justified. But, for the reasons we have explained, that contention does not support our concluding that the District Court erred in granting summary judgment to Ritz-Carlton on the Law 80 claim.

---

[3] In light of our conclusion on this score, we need not address whether the employees are right in contending that the District Court impermissibly relied on inadmissible evidence regarding the extent of damages, and that it was Ritz-Carlton's burden to prove that there was "just cause," as the employees do not contest that there was a "[f]ull, temporary, or partial closing of the operations of the establishment."

We now turn to the employees' challenge to the District Court's grant of summary judgment to Ritz-Carlton on their WARN Act claim.  In so ruling, the District Court correctly described the employees as alleging that "their termination was effective on April 30, 2018, for which they received a notification on March 19, 2018 (41 days prior to the effectiveness of the termination)" and that in consequence "Ritz-Carlton violated the statute and must compensate them with 19 days-worth of salaries and benefits, plus attorney's fees."  Rivera-Pina, 2022 WL 993639, at *12.  The District Court concluded that, as a matter of law, the claim was without merit on this record.  Id.

To explain why, the District Court began by setting forth its reasons for concluding that, as a matter of law, there had been no showing that the WARN Act had been violated.  The District Court explained as follows in that regard:

> On November 17, 2017, Ritz-Carlton issued WARN notices to its employees informing them of their layoffs effective October 6, 2017, as a consequence of damage to the hotel resulting from the hurricanes.  It was reasonable for Ritz-Carlton to so inform the employees, albeit 29 U.S.C. § 2102(b)(2)(B) did not require notice.
>
> The layoffs were to continue in effect while Ritz-Carlton evaluated the extent of the damages caused by the hurricanes, and until it was able to determine when the hotel would reopen its doors and continue with its normal operations.  Plaintiffs' last day of work was

- 15 -

September 20, 2017. The March 2018 notice came about six months later, when it became foreseeable that the layoffs could exceed six months. Because those terminations derived from the hurricanes, no 60-day advance notice was necessary. Nevertheless, in providing the termination notices in March 2018, Ritz-Carlton complied with the WARN notice framework.

Id. (citations omitted).

The District Court also went on to hold, however, that Ritz-Carlton was entitled to summary judgment on the employees' WARN Act claim even if the record gave rise to a genuine issue of material fact as to whether there had been a WARN Act violation. And that was so, the District Court explained, because of § 2104(a)(2)(B) of the statute. That provision, as set forth above, reduces an employer's monetary liability for a WARN Act violation by "any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation." 29 U.S.C. § 2104 (a)(2)(B). Accordingly, the District Court concluded that "if there was an advance-notice violation, the 19-day deficit would have been covered by the 32-hour weekly payments that plaintiffs received from September 20, 2017, to December 14, 2017; the April 12, 2018, payment; and the health-plan coverage that Ritz-Carlton provided to the employees up to March 31, 2018." Rivera-Pina, 2022 WL 993639, at *12. The District Court then further stated in a footnote that, "[f]rom the record, these were voluntary and unconditional

- 16 -

payments not required by any legal obligation." Id. at *12 n.17. Thus, the District Court concluded, "the WARN claim must be dismissed." Id. at *12.[4]

Given this separate § 2104(a)(2)(B)-based ground for granting summary judgment to Ritz-Carlton, the employees can succeed on their challenge on appeal only if they can show that the District Court erred in ruling that the "19-day deficit would have been covered" by the payments Ritz-Carlton made. Rivera-Pina, 2022 WL 993639, at *12. But, in challenging that aspect of the District Court's ruling, the employees' argument reads in its entirety:

> [I]t is clear that in November 2017 the employees were not terminated as Mrs. Cooper clearly stated in her deposition. Mrs. Cooper was the person that recommended the lay off of the appellant[s] on March 2018. At that moment the defendant did not pay any benefit or salary to the employees during that time. The District Court ignored all this evidence that showed there were issues of fact in this case that made impossible the issuance of a summary judgment.

And, notably, in this passage, the employees do not dispute that Ritz-Carlton paid each of the terminated employees the following

---

[4] To the extent that the employees mean for their challenge regarding the admission of exhibits 229 and 233 to be applicable to their WARN Act claim, any potential relevance of those exhibits concerns only the existence of a violation of the WARN Act. But because we need not address whether there was in fact a violation of the WARN Act, we similarly need not address the employees' challenge to the admission of those exhibits.

amounts: weekly payments from September 20, 2017 to December 14, 2017, worth 32 hours of work per week; health insurance coverage until March 31, 2018; and a lump sum payment of $1,000 on April 12, 2018. Nor do they argue that these amounts -- whether separately or in any combination -- were less than the amounts that Ritz-Carlton would have owed to the employees if Ritz-Carlton had violated the WARN Act. Nor do they dispute -- in fact, they conceded at oral argument -- that the payments were "voluntary" ones, notwithstanding that § 2104(a)(2)(B) provides that "[t]he amount for which an employer is liable . . . shall be reduced by . . . any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation." Nor, finally, do they dispute that the payments were "unconditional" payments under § 2104(a)(2)(B). Cf. Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1159 (9th Cir. 2001) (finding that certain severance payments were not "voluntary and unconditional," as they had been offered "on the condition that the employees remain on the job until the hotel casino closed"); Castro v. Chi. Hous. Auth., 360 F.3d 721, 733 (7th Cir. 2004) (finding that certain severance payments were not "voluntary and unconditional," as they were "intimately tied to settlement agreements in which the unions agreed to drop all pending lawsuits").

We are aware that the record shows that the weekly payments worth 32 hours of work per week, which were made from September to December 2017, preceded the notification that Ritz-Carlton provided in March of the termination that occurred in April. And the employees did assert at oral argument -- albeit for the first time -- that those payments cannot reduce Ritz-Carlton's liability unless they have a "link" to the April 2018 termination. But the employees have failed to develop an argument about what kind of "link" is required under the WARN Act or why such a "link" was absent here. Nor have they pointed to any authority that indicates that the District Court's reliance on the various payments was erroneous because the assertedly necessary "link" between the payments and the notification of termination was missing. Thus, the employees have failed to provide us with any ground that would permit us to conclude the District Court erred in relying on the various concededly "voluntary" payments as an independent ground for granting summary judgment to Ritz-Carlton on the WARN Act claim. See United States v. Leoner-Aguirre, 939 F.3d 310, 319 (1st Cir. 2019) (explaining that arguments raised for the first time at oral argument are deemed waived); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

**V.**

For the foregoing reasons, the judgment of the District Court is **affirmed**.