**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THI OF NEW MEXICO AT VALLE
NORTE, LLC, d/b/a Valle Norte
Caring Center,

        Plaintiff - Appellant,

v.

DUSTI HARVEY; FELIZ RAEL;
HARVEY LAW FIRM, LLC,

        Defendants - Appellees.

No. 11-2176
(D.C. No. 1:10-CV-00873-WJ-LFG)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO** and **HOLMES**, Circuit Judges, and **BRIMMER**, District
Judge.[**]

---

      THI of New Mexico at Valle Norte, LLC ("Valle Norte") appeals from the

district court's grant of summary judgment in favor of Dusti Harvey, Feliz Rael,

and the Harvey Law Firm, LLC (collectively, the "Harvey Firm"), on Valle

Norte's malicious-abuse-of-process and attorney-deceit claims. This lawsuit

---

[*]     This order is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

[**]     The Honorable Philip A. Brimmer, United States District Judge for
the District of Colorado, sitting by designation.

arises out of an earlier action (the "Tracy lawsuit") that the Harvey Firm brought against Valle Norte on behalf of its then client, James Tracy. After prevailing at the summary judgment stage in the Tracy lawsuit, Valle Norte initiated this action against the Harvey Firm, bringing claims of malicious abuse of process, attorney deceit, and civil conspiracy, all under New Mexico law. After discovery, the district court granted the Harvey Firm's motion for summary judgment as to all three of Valle Norte's claims. Valle Norte appeals, challenging the court's rulings only regarding its first two claims: malicious abuse of process and attorney deceit. We affirm the district court's grant of summary judgment in favor of the Harvey Firm.

**I**

In April 2005, Mr. Tracy was a resident of Valle Norte Caring Center, a long-term nursing facility that was owned and operated by Valle Norte. On the morning of April 22, 2005, Mr. Tracy awoke with priapism—a painful, non-sexual erection of the penis lasting more than four hours. Mr. Tracy eventually received two different surgeries, at two different hospitals on April 22 and 23, to treat his priapism. Once he was stabilized after the second surgery, Mr. Tracy returned to Valle Norte, where he remained until the completion of antibiotic therapy on May 1, 2005. While Mr. Tracy was at Valle Norte after his surgery, Valle Norte provided him little assistance and guidance regarding significant matters relating to his recovery. More specifically, Valle Norte expected Mr.

Tracy to cover his own sutures, and provided him gauze for this purpose. And, yet, the nurses there did not give Mr. Tracy instructions on how to dispose of the gauze, monitor the surgical site, or address potential issues of discharge and infection.

In initial discussions, Mr. Tracy told the Harvey Firm that he had suffered a priapism while at Valle Norte, Valle Norte had delayed in treating him, he had received two surgeries to treat the priapism, and as a result, he "had suffered an 'amputation' or 'auto-amputation' of his penis." Aplt. App. at 80 (Aff. of Dusti Harvey, dated Feb. 15, 2011). Based on this information, the Harvey Firm hired a nurse-consultant to review Mr. Tracy's medical files. The nurse-consultant's report indicated, *inter alia*, several concerns regarding Valle Norte's care of Mr. Tracy and its keeping of related medical records. After receiving the nurse-consultant's report, the Harvey Firm filed the Tracy lawsuit in June 2007. The complaint in the Tracy lawsuit alleged that:

> While in the care of [Valle Norte], Mr. Tracy suffered injuries and harm including, but not limited to, the following:
>
> a. severe delay in treatment for priapism resulting in a loss of his penis;
> b. failure to timely monitor penile wound for signs of infection;
> c. failure to timely complete dressing change of his Percutaneously Inserted Central Catheter;
> d. pain and suffering;
> e. mental anguish; and
> f. humiliation.

*Id.* at 63 (Compl. for Negligence, filed June 18, 2007).

While it is now clear that part of the allegation in "a."—regarding Mr. Tracy's loss of his penis—was not factually accurate (that is, not supported by the facts), Ms. Harvey stated in an affidavit that the Harvey Firm's "gradual realization that [it] lacked actual documentation of [Mr. Tracy's] 'loss'" did not occur until sometime during the spring of 2008. *Id.* at 80. As Ms. Harvey further stated, however, at the time the Harvey Firm filed the complaint and throughout the pendency of the Tracy lawsuit, she "had a good faith belief, based upon the evaluation and opinion of an expert medical consultant, that the defendant nursing home had been negligent in its care and treatment of Mr. Tracy in a number of ways, proximately causing serious personal injuries, damages, and pain and suffering to Mr. Tracy." *Id.* at 81.

At a mediation conference in April 2008, the Harvey Firm asked for an $850,000 settlement, which included damages for the loss of Mr. Tracy's penis. *See id.* at 505 (Letter from Dusti Harvey to William C. Madison, dated Apr. 7, 2008). However, Valle Norte refused the offer. Around this time, the Harvey Firm learned that Mr. Tracy was dying of unrelated medical conditions and subsequently decided to withdraw from the lawsuit. The state district court granted the Harvey Firm's motion to withdraw, and later entered an order granting summary judgment in favor of Valle Norte, dismissing the complaint with prejudice.

Valle Norte filed the instant action in the United States District Court for the District of New Mexico against the Harvey Firm, asserting claims of malicious abuse of process, attorney deceit, and civil conspiracy, all under New Mexico law, in relation to the Harvey Firm's filing of, and participation in, the Tracy lawsuit. After discovery, the district court granted summary judgment in favor of the Harvey Firm.

With respect to Valle Norte's malicious-abuse-of-process claim, the district court found that even though the complaint could have been better drafted, the underlying facts were enough to allege negligence against Valle Norte and thus there was probable cause to bring the underlying suit. Additionally, the court found that there were no procedural improprieties that would support a malicious-abuse-of-process claim because Valle Norte only alleged *one* unfounded claim, not a *multitude* of unfounded claims, and the misrepresentations that the Harvey Firm made during settlement negotiations did not amount to extortion or fraud. Finally, with respect to Valle Norte's attorney-deceit claim, the district court found that the claim must fail because recovery under the relevant statute required a showing of fraud and Valle Norte had not presented enough evidence to support such a showing. The court entered judgment in favor of the Harvey Firm, and this appeal followed.

**II**

Valle Norte raises three issues on appeal. First, it alleges that the district

-5-

court misinterpreted New Mexico law regarding the requisite proof necessary to succeed on a malicious-abuse-of-process claim. Second, Valle Norte argues that the district court misinterpreted New Mexico's attorney-deceit statute and violated Federal Rule of Civil Procedure 56(f) when it failed to give Valle Norte a chance to respond to the district court's interpretation of the statute. Finally, Valle Norte asserts that the district court improperly credited testimony and ignored other uncontested evidence regarding the Harvey Firm's pre-filing investigation and reasonable beliefs. Because Valle Norte's first and third arguments address the malicious-abuse-of-process claim, we turn first to those two arguments, and then address Valle Norte's arguments regarding its attorney-deceit claim.

"In diversity cases, the laws of the forum state govern our analysis of the underlying claims, while federal law determines the propriety of the district court's summary judgment." *Morris v. Travelers Indem. Co. of Am.*, 518 F.3d 755, 758 (10th Cir. 2008). "We review the district court's determinations of state law de novo." *Ayala v. United States*, 49 F.3d 607, 611 (10th Cir. 1995). In ascertaining the laws of the forum state, while we are not bound by the decisions of New Mexico's intermediate court, its considered judgments are not to be disregarded unless we are persuaded by other means that the New Mexico Supreme Court would reach a different outcome. *See Rancho Lobo, Ltd. v. Devargas*, 303 F.3d 1195, 1202 n.2 (10th Cir. 2002) ("[W]here an intermediate

appellate state court rests its considered judgment upon the rule of law which it announces, that . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." (quoting *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1132 (10th Cir. 2002)) (internal quotation marks omitted)).

"We review a district court's grant of summary judgment de novo, applying the same standard as the district court." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). Namely, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing a motion for summary judgment, we consider the evidence in the light most favorable to the non-moving party." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (quoting *Duvall v. Ga.-Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1259 (10th Cir. 2010)) (internal quotation marks omitted).

### III

We begin by discussing the general contours and purposes of New Mexico's malicious-abuse-of-process tort. New Mexico law recognizes this tort in order "to discourage the misuse of [its] judicial system." *LensCrafters, Inc. v. Kehoe*, 282 P.3d 758, 765 (N.M. 2012). "[T]he use of process for an illegitimate purpose forms the basis of the tort." *Durham v. Guest*, 204 P.3d 19, 26–27 (N.M.

2009).  However, the "tort is disfavored in the law [b]ecause of the potential chilling effect on the right of access to the courts."  *LensCrafters*, 282 P.3d at 765–66 (alteration in original) (quoting *Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 37 (N.M. 2007)) (internal quotation marks omitted).  As the New Mexico Supreme Court noted in *Fleetwood*, "the litigation process must allow plaintiffs room to frame the issues and make changes in their approach when necessary."  164 P.3d at 37.  Indeed, the court

> decline[d] to interpret [its past precedent] in a manner that would expose plaintiffs, who are subject to statutes of limitations and have not had the benefit of discovery when deciding what claims to pursue, to malicious abuse of process attacks based on lack of probable cause if it is later determined that one particular claim of several was not supported.

*Id.*

To succeed on a malicious-abuse-of-process claim, a plaintiff must establish three elements: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages."  *LensCrafters*, 282 P.3d at 766 (quoting *Durham*, 204 P.3d at 26) (internal quotation marks omitted).  In ruling against Valle Norte, the district court focused its analysis on the first element—that is, the improper use of process.  Because we ultimately agree with the district court, and conclude that Valle Norte's failure to establish the first element is determinative, our analysis

-8-

of its malicious-abuse-of-process claim need not proceed further.

"An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) 'an irregularity or impropriety suggesting extortion, delay, or harassment[,]' or other conduct formerly actionable under the tort of abuse of process." *Durham*, 204 P.3d at 26 (alteration in original) (quoting *Fleetwood*, 164 P.3d at 35). Valle Norte made arguments regarding both prongs of this element and we address each prong in reverse order, as addressed by Valle Norte. In doing so, we are mindful that "the two types of misuse of process—lack of probable cause and procedural impropriety—require fundamentally different approaches." *Fleetwood*, 164 P.3d at 36.

**A**

In general, a legally sufficient procedural irregularity or impropriety can be established by showing "'an irregularity or impropriety suggesting extortion, delay, or harassment[,]' or other conduct formerly actionable under the tort of abuse of process." *Durham*, 204 P.3d at 26 (alteration in original) (quoting *Fleetwood*, 164 P.3d at 35); *see also DeVaney v. Thriftway Marketing Corp.*, 953 P.2d 277, 287 (N.M. 1997) (noting its earlier list of forms of abuse of process that included "excessive execution on a judgment; attachment on property other than that involved in the litigation or in an excessive amount; oppressive conduct in connection with the arrest of a person or the seizure of property, such as illegal detention and conversion of personal property pending suit; [and] extortion of

excessive sums of money" (quoting *Farmers Gin Co. v. Ward*, 389 P.2d 9, 11 (N.M. 1964)) (internal quotation marks omitted)), *overruled on other grounds by Durham*, 204 P.3d 19, *abrogated on other grounds by Fleetwood*, 164 P.3d 31. Stated succinctly, "[a] use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt." *Durham*, 204 P.3d at 26.

Valle Norte, however, has not alleged the misuse of any procedural devices such as discovery, subpoenas, or attachments. Instead, its claim is focused on the Harvey Firm's allegedly wrongful use of proceedings, as allegedly evidenced by the Harvey Firm's proposal of an $850,000 settlement agreement in the mediation conference and related failure to provide, during the mediation, a photograph showing that Mr. Tracy had not lost his penis. In addition, in support of its claim, Valle Norte points to the Harvey Firm's alleged failure to disclose one of Mr. Tracy's medical reports.

But, as the Harvey Firm correctly argues, Valle Norte cannot rely on mediation-related communications and non-disclosures as support for its claims because the New Mexico Mediation Procedures Act (the "MPA"), N.M. Stat. Ann. §§ 44-7B-1 to 44-7B-6 (2007), prohibits the use of statements made in connection to the mediation—namely, the $850,000 settlement offer and non-disclosure of

the photograph.[1]  In short, we conclude that, as it relates to the settlement-related communications, i.e., the "mediation communications," we cannot consider these communications as evidence before us.

Valle Norte does not contest that the act applies as a general matter and has waived any argument that the MPA should not operate to exclude these statements from our consideration.  Moreover, even if we did not apply waiver, the Harvey Firm wins on the merits of their arguments that such evidence is not admissible. And, once the mediation communications are excluded from our consideration, the other evidence offered by Valle Norte is not enough to establish a malicious-abuse-of-process claim given the tort's narrow construction.  *See Fleetwood*, 164 F.3d at 37.

Under the MPA, unless one of the exceptions applies, "all mediation communications are confidential, and not subject to disclosure and shall not be used as evidence in any proceeding."  N.M. Stat. Ann. § 44-7B-4.  The MPA defines "mediation communication" to mean "a statement, whether oral or in a record or verbal or nonverbal, that . . . is made for purposes of considering,

---

[1]  The district court assumed, without deciding, that it could consider what came out of the mediation, because it found that even with such evidence Valle Norte's claims lacked merit.  However, because we may affirm on any ground supported by the record, we address the propriety of using the evidence instead of assuming its admissibility.  *See D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1231 (10th Cir. 2013); *Wells v. City & Cnty. of Denver*, 257 F.3d 1132, 1149–50 (10th Cir. 2001).

conducting, participating in, initiating, continuing or reconvening a mediation."
*Id.* § 44-7B-2(B). The Harvey Firm argues that the statements that it made in
relation to the mediation—including its nonverbal statements that are evidenced
by its failure to provide the photograph—constitute "mediation communications"
and, as such, are not admissible.

In response, Valle Norte makes no arguments contesting the applicability of
section 44-7B-4 of the MPA to prohibit the use of these statements as evidence
before us. Indeed, in its briefing, Valle Norte makes no explicit arguments
regarding the MPA, choosing instead to attempt to incorporate by reference its
briefing before the district court. *See* Aplt. Reply Br. at 2 n.2 ("HLF's assertion
that it should be permitted to bury some of its misconduct beneath New Mexico's
mediation privilege is similarly unsupportable for the reasons Valle Norte
advanced below."). However, it is well established that our court does not
approve of the practice of referring on appeal to previous district court filings
instead of setting forth arguments in one's appellate briefing, and we are under no
obligation to consider such arguments. *See In re Antrobus*, 563 F.3d 1092, 1097
(10th Cir. 2009) ("[W]e have disapproved of parties adopting their previous
filings in lieu of fully setting forth their argument before this court."); *Concrete
Works of Colo., Inc. v. City & Cnty. of Denver*, 321 F.3d 950, 979 n.14 (10th Cir.
2003) ("This court is under no obligation to consider arguments not fully set forth
in a party's appellate brief, including arguments incorporated by reference to

-12-

prior pleadings or other materials."); *see also* 10th Cir. R. 28.4 ("Incorporating by reference portions of lower court or agency briefs or pleadings is disapproved . . . .").

The appellate process is a winnowing process whereby the parties focus on the arguments that they view as more likely to prevail. *Cf. United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) ("[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, . . . is the hallmark of effective appellate advocacy." (alteration in original) (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)) (internal quotation marks omitted)). As we recently explained,

> [u]nder Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure, an appellant must present in his brief his 'contentions and reasons for them, with citations to the authorities and parts of the record on which the appellant relies.' Further, parties appearing before this court cannot satisfy Rule 28 by incorporating their claims by reference to . . . records from the court below.

*United States v. Patterson*, 713 F.3d 1237, 1250 (10th Cir. 2013). "[A]llowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules and unnecessarily complicate the task of an appellate judge." *Id.* (quoting *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998)) (internal quotation marks omitted). We conclude that through its inadequate briefing, Valle Norte has waived any argument that the MPA should not preclude the

-13-

admission of the mediation communications. *See Gaines-Tabb*, 160 F.3d at 624 ("[W]e adhere to our rule that arguments not set forth fully in the opening brief are waived . . . ." (citations omitted)); *cf. United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that '[a]rguments inadequately briefed in the opening brief are waived.'" (alteration in original) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998))).

Moreover, even were we to not treat Valle Norte's lack of response as a waiver, the Harvey Firm still has the better of the argument. The parties do not dispute the general applicability of the MPA to their mediation. The discussions regarding the settlement amount and the non-disclosure of the photograph in connection with the mediation, *see* N.M. Stat. Ann. § 44-7B-2(B) (including "nonverbal" statements in the definition of "mediation communication"), constitute "mediation communications" and are thus protected by the MPA. Finally, none of the exceptions that make certain mediation communications admissible apply. *See id.* § 44-7B-5 (listing exceptions).

Once the mediation communication evidence is properly excluded from our consideration, the only evidence of procedural impropriety that Valle Norte sets forth is the Harvey Firm's alleged failure to disclose one of Mr. Tracy's medical reports. While we do not condone any such failure, non-disclosure of a medical report is not the kind of "procedural irregularity," "misuse of a procedural device," or the "wrongful use of proceedings" contemplated by *DeVaney*,

-14-

*Fleetwood*, and *Durham*, especially given the narrow construction of the "disfavored" tort. *Cf. LensCrafters*, 282 P.3d at 765–66 ("The tort is 'disfavored in the law [b]ecause of the potential chilling effect on the right of access to the courts.'" (alteration in original) (quoting *Fleetwood*, 164 P.3d at 37) (internal quotation marks omitted)). We therefore conclude that, standing alone, the alleged failure to disclose one of Mr. Tracy's medical reports does not amount to a procedural impropriety of the level cognizable in a malicious-abuse-of-process claim.

In sum, the question before the district court was whether Valle Norte could establish a procedural impropriety that would be legally sufficient to satisfy the improper-use-of-process element, and, while we reach the result by means of a different path than the district court, we conclude that it correctly determined that Valle Norte could not.

**B**

We now turn to Valle Norte's arguments regarding the second manner in which it tries to show an improper use of process by the Harvey Firm—*viz.*, "filing a complaint without probable cause." *Durham*, 204 P.3d at 26. These arguments address the Harvey Firm's pre-filing investigation, reasonable belief, and probable cause. As set out above, even if malicious-abuse-of-prosecution plaintiffs cannot establish a procedural impropriety, they may still succeed on their claim if they can establish an absence of probable cause. In determining

-15-

whether the Harvey Firm had probable cause, we ask "whether [they] had a reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim could be established to the satisfaction of a court or a jury." *Guest v. Berardinelli*, 195 P.3d 353, 357 (N.M. Ct. App. 2008). In making this determination, "[w]e first inquire whether Defendants have made a prima facie showing that they performed a reasonable pre-filing inquiry." *Id.* If we find that the Harvey Firm has made such a showing, we then ask "whether [they] have made a prima facie showing that the knowledge arising from their pre-filing inquiry supported a reasonable belief that they had grounds to bring their claims against [Valle Norte]." *Id.* In the end, we conclude that the Harvey Firm's pre-filing inquiry—notably, the nurse-consultant's report—gave them knowledge that supported such a reasonable belief.

Valle Norte attempts to demonstrate that the Harvey Firm lacked probable cause to file the Tracy suit by focusing on the nurse-consultant's report and the concerns it raised. Specifically, Valle Norte asserts that "[t]he district court erroneously credited as uncontested Defendants' testimony that they read [the] nurse-consultant's report and that it provided a basis, without the need for further investigation, to sue Valle Norte for negligence." Aplt. Opening Br. at 41. Similarly, Valle Norte argues that the district court failed to draw all reasonable inferences in favor of the non-movant, Valle Norte, when it credited Ms. Harvey and Ms. Rael's sworn statements that they had read the nurse-consultant's report

prior to filing the Tracy Lawsuit. Finally, Valle Norte makes much of the fact that medical records, allegedly in the Harvey Firm's possession prior to the filing of the suit, indicated that Mr. Tracy had not suffered the loss of his penis and that the nurse's report alerted the Harvey Firm to a lack of evidence regarding causation.

We agree with the district court that "the nurse-consultant's report obtained by [the Harvey Firm] outlined the direct evidence of negligence in the nursing home."[2] Aplt. App. at 758 (Mem. Op. & Order Granting Defs.' Mot. for Summ. J., filed Aug. 4, 2011). Keeping in mind that "[p]robable cause does not require certainty," *Guest*, 195 P.3d at 357 (alteration in original) (quoting *S. Farm Bureau Cas. Co. v. Hiner*, 117 P.3d 960, 965–66 (N.M. Ct. App. 2005)) (internal quotation marks omitted), we note that the nurse-consultant's report established several undisputed facts that support a reasonable belief that there were grounds for a negligence claim against Valle Norte.

First, as the report correctly indicated, Mr. Tracy had a non-sexual erection that lasted for more than four hours before Valle Norte provided him with emergency medical care. Second, the nurse-consultant noted several issues with

---

[2]      Valle Norte's challenge to the reasonableness of the Harvey Firm's pre-filing inquiry is intertwined with its challenges to the district court's finding that the nurse-consultant's report supported a reasonable belief of probable cause. We therefore consider the arguments together, and because we agree with the district court's finding regarding probable cause, we also conclude that the pre-filing inquiry that led to that report was reasonable.

Valle Norte's records, including a lack of nursing care plans and a "pattern of omission[s]." Aplt. App. at 116 (Case ReportBook, dated Feb. 19, 2007). Finally, Valle Norte did not assist Mr. Tracy in his recovery from the priapism and related surgeries. In sum, the nurse-consultant's report established facts that supported the vast majority of the injuries alleged in the complaint—e.g., failure to timely monitor the penile wound, failure to timely complete dressing changes, pain and suffering, mental anguish, and humiliation—and thus the reasonable pre-filing investigation supported a reasonable belief that the negligence claim "could be established to the satisfaction of a court or a jury." *Guest*, 195 P.3d at 357.

Valle Norte argues that the nurse-consultant's report was "based on incomplete information and . . . raised 'red flags' about Mr. Tracy's . . . story." Aplt. Opening Br. at 42. However, the "incomplete information" and "red flags" relate to whether Mr. Tracy actually "lost" his penis, not to the general negligence alleged against Valle Norte, and crucially, "lack of probable cause is not a claim-by-claim inquiry, but, rather, is determined as to the lawsuit in its entirety." *Fleetwood*, 164 P.3d at 37. Any "incomplete information" or "red flags" do not discount the undisputed facts, noted above, that the nurse-consultant's report established. *Cf. Guest*, 195 P.3d at 360 ("We hold that the determination by a jury of any of the above facts would not negate Defendants' probable cause to file suit based upon the remaining undisputed facts before them at the time of filing."). In other words, these alleged flaws in the nurse-consultant's report do

-18-

not discount the general negligence that was clearly outlined by the report. Apparent lack of probable cause in relation to the allegation that Mr. Tracy suffered the loss of his penis—only one allegation among many lodged against Valle Norte in the complaint—is not enough to subject the Harvey Firm to liability on a claim for malicious abuse of prosecution.

Moreover, Valle Norte presents no actual evidence that the Harvey Firm did not rely on the nurse-consultant's report—a fact that both Ms. Harvey and Ms. Rael swore to under oath, and that is supported by a pre-filing email from the nurse-consultant, in which she sets out, in part, her belief that Valle Norte was negligent. *See* Aplt. App. at 89 (Email from Rose Marie Harvey to Julie Canton, et al., dated Mar. 9, 2007) (requesting records dating from the period after Mr. Tracy was discharged from Valle Norte and explaining ways in which Valle Norte was negligent).

Instead of directly challenging the Harvey Firm's evidence, Valle Norte presents us with circumstantial evidence that at most supports an inference that the Harvey Firm was at times careless in reviewing documents. For example, Valle Norte points us to an email from April 2008, almost a year after the case was filed, with the subject "Tracy - *pages from document production*," where Ms. Rael commented to two members of the Harvey Firm who were working on the case, "We get good stuff when we actually review the documents!" *Id.* at 620 (Email from Kim Hagan to Feliz Rael & Jennifer Foote, dated Apr. 28, 2008)

-19-

(emphasis added). But this comment (which may have been a poor attempt at humor), and the others like it that Valle Norte sets out, do not challenge the sworn statements of the Harvey Firm's lawyers that they relied on the nurse-consultant's report in filing the complaint in the Tracy lawsuit. *Cf. Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 956 n.3 (10th Cir. 2012) (rejecting the argument that affidavits "should have been disregarded . . . as 'sham affidavits'" because, to be disregarded as such, "an affidavit must contradict prior sworn statements," and the affidavits at issue "did not contradict [the affiant's] testimony"). All of the Harvey Firm's comments set out by Valle Norte were made nine months *after* filing and in relation to documents that the Harvey Firm received *after* filing.[3] Given the subject matter and the timing of these comments, this evidence is not responsive to the sworn statements of Ms. Harvey and Ms. Rael that the Harvey Firm had a good faith belief, *at the time of filing*, that Valle Norte had been

---

[3]    We also note that—while the carelessness of the Harvey Firm is not at issue here and thus any disputes of fact regarding the Harvey Firm's carelessness are not material—even the inference of carelessness is refuted by comments in emails circulated among members of the Harvey Firm's legal team both before and after the filing of the complaint in the Tracy lawsuit. Specifically, pre-filing emails indicate a knowledge of the medical records and the nurse-consultant's opinions. *See* Aplt. App. at 87 (Email from Dusti Harvey to Julie Canton & Rose Marie Harvey, dated Mar. 2, 2007) (asking Ms. Canton to send to the nurse-consultant the medical records that Ms. Canton describes and which Ms. Canton had just received from Mr. Tracy and his father); *id.* at 89. And in a post-filing email from early April 2008—a few weeks before the emails that Valle Norte highlights were sent—Ms. Hagan referred to her recollection "of the [medical records] we have." *Id.* at 94 (Email from Kim Hagan to Feliz Rael, Julie Canton, & Dusti Harvey, dated Apr. 1, 2008).

negligent and that this belief was based on the nurse-consultant's report. *See* Aplt. App. at 81 ("At the time of the filing of the complaint in the [Tracy] Lawsuit, . . . I had a good faith belief, based upon the evaluation and opinion of an expert medical consultant, that [Valle Norte] had been negligent . . . ."); *id.* at 179 (Aff. of Feliz Angelica Rael, dated Feb. 9, 2011) (same). Thus, the comments identified by Valle Norte do not create an actual dispute as to the veracity of the sworn statements by members of the Harvey Firm, which are also supported by the internal emails with the nurse-consultant.

In short, Valle Norte's arguments fail under our necessarily narrow construction of New Mexico's malicious-abuse-of-process tort. *See Fleetwood*, 164 P.3d at 37 ("[T]he malicious abuse of process tort [must] be construed narrowly in favor of the right of access to the courts."). The district court was correct in finding that the Harvey Firm had conducted a reasonable pre-filing inquiry and that the inquiry "supported a reasonable belief that they had grounds to bring their claims against [Valle Norte]." *Guest*, 195 P.3d at 357. Because the district court—as discussed above—was also correct in finding that there were no procedural improprieties, the district court did not err in dismissing Valle Norte's malicious-abuse-of-process claim. Accordingly, we conclude that Valle Norte did not meet either prong necessary to establish an improper use of process by the Harvey Firm and thus could not have shown a malicious abuse of process.

## IV

We now turn to Valle Norte's attorney-deceit claim, which the district court dismissed after finding that the attorney-deceit statute did not create a separate cause of action and that Valle Norte had not established the requisite underlying claim of common law fraud. Under New Mexico law, "[i]f an attorney is guilty of deceit or collusion or consents thereto with intent to deceive the court, judge or party, he shall forfeit to the injured party, treble damages to be recovered in a civil action." N.M. Stat. Ann. § 36-2-17. There is a paucity of New Mexico case law interpreting this statute.[4] In response to the parties' arguments urging the district court to adopt alternatively restrictive and broad readings of the statute, the district court found that neither side's interpretation of the statute was correct and instead found that "the attorney deceit statute is not an independent cause of action, but merely provides treble damages where an attorney has committed fraud otherwise actionable under the common law or statute." Aplt. App. at 766. The district court then relied on its earlier finding that Valle Norte had not shown

---

[4] While one New Mexico Supreme Court case, *Bennett v. Kisluk*, 814 P.2d 89 (N.M. 1991), could be read to suggest that *underlying claims* are what trigger or "warrant[]" treble damages for attorney deceit, *see Bennett*, 814 P.2d at 89 ("[Plaintiff] sued her former attorney . . . alleging malpractice, intentional infliction of emotional suffering, and misrepresentations *that warranted treble damages* under [§ 36-2-17]." (emphasis added)), this does not answer the question regarding whether a plaintiff *must* rely on such underlying claims and, relatedly, whether a plaintiff's claim for treble damages must fail if (as here) the plaintiff cannot establish an underlying claim.

that the Harvey Firm committed fraud, and thus held that Valle Norte's attorney-deceit claim failed as a matter of law.

Valle Norte argues that we should reverse the district court for three reasons: (1) the district court's interpretation is contrary to the statute's plain meaning and improperly conflates "deceit" and "fraud"; (2) the district court's interpretation is contrary to "persuasive authority from New York"; and (3) the district court never gave Valle Norte the opportunity to respond to its interpretation, in contravention of Federal Rule of Civil Procedure 56(f). Aplt. Opening Br. at 35. After looking to New Mexico law and interpreting the attorney-deceit statute, we address Valle Norte's first two arguments together, and then address Valle Norte's contention that the district court's decision was made in violation of Rule 56(f).

**A**

"If the state supreme court has not interpreted a provision of the state's statutory code, the federal court 'must predict how the court would interpret the code in light of [state] appellate court opinions, decisions from other jurisdictions, statutes, and treatises.'" *United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004) (alteration in original) (quoting *United States v. Colin*, 314 F.3d 439, 443 (9th Cir. 2002)). In making this prediction, "we are bound to follow rules of statutory construction . . . embraced by the [New Mexico] judiciary." *Id.* at 1145–46. In New Mexico, "[t]he guiding principle of statutory

construction is that a statute should be interpreted in a manner consistent with legislative intent. To determine legislative intent, we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Hovet v. Allstate Ins. Co.*, 89 P.3d 69, 72 (N.M. 2004) (citation omitted).

However, neither the language of the statute, the purpose to be achieved, nor the wrong to be remedied aids us in our interpretation. The language of the attorney-deceit statute, "If an attorney is guilty of deceit or collusion or consents thereto with intent to deceive . . . he shall forfeit to the injured party[] treble damages," N.M. Stat. Ann. § 36-2-17, does not answer the questions before us—namely, whether the statute creates a private right of action for deceit, and, if it does, whether one must prove common law fraud or deceit before being able to recover under the statute. The apparent purpose of Article 2, the article of the New Mexico Code in which the statute is found, is the regulation of attorneys. *See State Bar v. Guardian Abstract & Title Co.*, 575 P.2d 943, 947 (N.M. 1978) ("The close regulation of those who practice law is to protect the unwary and the uninformed from injury at the hands of persons unskilled or unlearned in the law."); *cf. Hovet*, 89 P.3d at 73 (determining what article the statute at issue was part of and then looking to the purpose of that article to inform the meaning of the statute at issue). But the fact that the purpose of the statute is to regulate attorneys sheds little light on whether the legislature meant to create a new,

distinct cause of action as part of that regulation or whether it only meant to establish a treble-damages remedy for claims of fraud and deceit that could be established against attorneys under the common law. Finally, "the wrong to be remedied," *Hovet*, 89 P.3d at 72, does not further our inquiry either. The wrong here is deceit or collusion on the part of an attorney. *See* N.M. Stat. Ann. § 36-2-17. However, this wrong does not provide us with guidance regarding the questions before us (that is, whether the statute creates a private right of action for deceit, and, if it does, whether one must prove common law fraud or deceit before being able to recover under the statute).

Recognizing the lack of guidance in New Mexico case law, Valle Norte urged the district court, and now urges us, to follow New York's approach to its similar statute. Specifically, Valle Norte urges us to adopt the view articulated in *Amalfitano v. Rosenberg*, 903 N.E.2d 265 (N.Y. 2009). In *Amalfitano*, New York's highest court interpreted New York's similar attorney-deceit statute as providing for a private cause of action without proof of common law fraud:

> The operative language at issue—"guilty of any deceit"—focuses on the attorney's intent to deceive, not the deceit's success. . . . [T]o limit forfeiture under [the statute] to successful deceits would run counter to the statute's evident intent to enforce an attorney's special obligation to protect the integrity of the courts and foster their truth-seeking function.

*Id.* at 268–69. But as the district court recognized here, *Amalfitano* "took the attorney deceit doctrine in an entirely new direction"—one of expanding the

-25-

attorney-deceit statute. Aplt. App. at 765; *see* Alex B. Long, *Attorney Deceit Statutes: Promoting Professionalism Through Criminal Prosecutions and Treble Damages*, 44 U.C. Davis L. Rev. 413, 449 (2010) (noting that "nearly all courts have interpreted the statutory language [in their respective attorney-deceit statutes] in a fairly restrictive fashion . . . [but] in 2009, . . . New York[] strayed from the herd and interpreted its attorney deceit statute in a manner more likely to lead to attorney liability").

We believe that New Mexico would not likely traverse the same road as New York. Instead, given the emphasis that the New Mexico Supreme Court has placed on the "right of access to the courts," *Fleetwood*, 164 P.3d at 37, it is likely to read its own attorney-deceit statute restrictively. *Cf. Richter v. Van Amberg*, 97 F. Supp. 2d 1255, 1260 (D.N.M. 2000) ("In my view, New Mexico would give effect to the limitation contained in the statute's language and follow the majority view [that the attorney-deceit statute applies only in the context of judicial proceedings]."). Thus, it is more likely that New Mexico would follow the jurisdictions that have limited the reach of such statutes by holding that section 36-2-17 does not create a new cause of action but instead provides a treble-damages remedy for claims that can be established under common law fraud. *See, e.g.*, *Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 33 (Utah 2003) (holding that its similar statute did "not create a separate and distinct cause of action, but rather merely provides for recovery of treble damages

for a cause of action for the common law tort of deceit in a civil action"); *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 666–67 (Ind. Ct. App. 2002) ("[T]he attorney deceit statute 'does not create a new cause of action but, instead, trebles the damages recoverable in an action for deceit.'" (quoting *Anderson v. Anderson*, 399 N.E.2d 391, 403 (Ind. Ct. App. 1979))); *see also* Long, *supra*, at 449.  Thus, we agree with the district court's reading of the statute and find that New Mexico's attorney deceit statute does not create an independent cause of action.

Moreover, we are not convinced by Valle Norte's arguments that deceit in this context is distinct from common law fraud.[5]  These arguments focus on the observation that fraud and deceit are sometimes used in the disjunctive in "other New Mexico statutes and rules governing lawyer conduct."  Aplt. Opening Br. at 36.  However, these arguments ignore the New Mexico tort law referring to the tort of common law fraud as "the tort of fraud or deceit."  *See Sims v. Craig*, 627 P.2d 875, 877 (N.M. 1981) (quoting *Maxey v. Quintana*, 499 P.2d 356, 359 (N.M. Ct. App. 1972)) (internal quotation marks omitted); *Hockett v. Winks*, 485 P.2d 353, 354 (N.M. 1971) (discussing "the tort of deceit (or fraud and deceit as it is sometimes called)"), *overruled on other grounds by Duke City Lumber Co. v.*

_____

[5] While the following reasoning was not articulated by the Harvey Firm, nor relied on by the district court, the issues herein are clearly before us.  Furthermore, "[i]t is well-established that 'we are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'"  *D.A. Osguthorpe*, 705 F.3d at 1231 (quoting *Wells*, 257 F.3d at 1149–50).

*Terrel*, 540 P.2d 229, 301 (N.M. 1975). Indeed, the tort of deceit is commonly understood to have the same elements as the "common law fraud" used by the district court: "1. A false representation . . . of fact. 2. Knowledge or belief on the part of the defendant that the representation is false . . . . 3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation. 4. Justifiable reliance upon the representation on the part of the plaintiff . . . . 5. Damage[s] . . . ." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 105, at 728 (5th ed. 1984) (footnotes omitted).

As further support, Valle Norte points to New Mexico Supreme Court disciplinary decisions where it claims the court "has made clear that under the Professional Rules a lawyer need not actually commit fraud to engage in deceit." Aplt. Opening Br. at 37. But these decisions all address lawyer misconduct in the context of disciplinary actions, not in the context of private causes of action. Accordingly, in our view, they are essentially inapposite. *Cf. Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 750 P.2d 118, 123–24 (N.M. 1988) ("[New Mexico's former Code of Professional Responsibility] was not intended to create a private cause of action since its intended remedy is the imposition of disbarment, suspension or reprimand of the offending attorneys. The public can avail itself of other remedies against unprofessional lawyers."); N.M. Code of Prof'l Conduct Scope ("Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached.

-28-

The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.").

In sum, we conclude that the district court's interpretation of section 36-2-17 is not contrary to its plain meaning.[6]

**B**

Turning now to Valle Norte's final argument, that the district court violated Rule 56(f) in adopting a construction of the statute that neither party had urged, we conclude that there was no such violation. As relevant here, Rule 56(f) provides that "[a]fter giving notice and a reasonable time to respond, the court may . . . (2) grant the motion on grounds not raised by a party." Fed. R. Civ. Pro. 56(f); *see Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011) (reversing the district court's grant of summary judgment because it

---

[6] Valle Norte does not assert that the Harvey Firm committed common law fraud or that the district court's finding that it had not established as much was in error, and instead focuses on the district court's interpretation of the statute and argues that it "never gave Valle Norte the chance to respond to this erroneous interpretation." Aplt. Opening Br. at 35. As the district court explained, however, when analyzing whether Valle Norte had established common law fraud as required under the proper interpretation of the statute, Valle Norte "did not sufficiently present evidence to support its fraud allegation . . . for purposes of the attorney deceit claim." Aplt. App. at 767. Valle Norte does not challenge this determination on appeal. Because we find that the district court correctly interpreted the statute, we need not address the issue of whether the Harvey Firm committed common law fraud because the district court's decision on that issue remains unchallenged before us.

was not proper under Rule 56(f) where the district court had "entered judgment on claims not identified by [the moving party] in [its] Rule 56 motion and without advance notice"). Valle Norte argues that the district court erred because it failed to give notice before relying on an interpretation of the New Mexico attorney-deceit statute that was not advanced by either party. While Valle Norte is correct that the specific interpretation of the attorney-deceit statute that the district court based its decision on was not advanced by either party, Valle Norte asked the district court to construe the statute. *See* Aplt. App. at 305 (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J., filed May 31, 2011) ("Cases interpreting New Mexico's attorney deceit statute are scarce. But other States' courts have interpreted substantially similar deceit statutes which should be persuasive here."). More specifically, the ground that Valle Norte advanced was that the attorney-deceit statute—properly construed—afforded it relief. In turn, the district court interpreted the statute, and it ruled that the statute did not provide a basis for relief. As such, the district court's determination was directly responsive to the ground for relief presented by Valle Norte.[7] *Cf. Liberty Mut. Ins. Co. v. Pella*

---

[7] Valle Norte's focus on the sua sponte nature of the district court's decision is understandable given the district court's opinion itself, where it characterized its grant of summary judgment as being "on grounds not raised in [the Harvey Firm's] motion." Aplt. App. at 764. However, we decline to find that the "grounds" referred to by the district court were the distinct type contemplated by the drafters of the Federal Rules of Civil Procedure in Rule 56(f)(2).

*Corp.*, 650 F.3d 1161, 1177–78 (8th Cir. 2011) (finding that the district court's grant of summary judgment was not improper despite the non-prevailing party's argument that the decision had been based on a position "that neither party briefed in its summary judgment motions" because "the critical issue necessarily encompassed [the findings of the district court,]" in other words, "[t]he district court did not grant summary judgment on an issue not raised by the parties because the ultimate issue never changed" (emphases omitted)).

Valle Norte relies on the First Circuit's decision in *Baltodano v. Merck, Sharp & Dohme (I.A.) Corp.*, 637 F.3d 38, 43–44 (1st Cir. 2011), where the First Circuit reversed the district court's sua sponte grant of summary judgment because it was "procedurally premature." But Valle Norte's arguments here miss the mark because they are incorrectly based on the premise that the district court granted summary judgment sua sponte, which the district court did not do. Instead, as discussed above, the district court granted summary judgment on a ground that Valle Norte had clearly placed before it—*viz.*, the interpretation of the attorney-deceit statute. That this was not a sua sponte grant of summary judgment is made even more apparent when examining the situation in *Baltodano*, where the district court granted summary judgment sua sponte on a defamation claim. *See id.* Specifically, the prevailing party below had "asked for summary judgment only on 'certain counts' and didn't list defamation as one of them." *Id.* at 43. In fact, the party appealing the sua sponte grant of summary judgment had

"specifically pointed [this] out in his opposition brief," and the prevailing party "did not address the issue in its reply brief." *Id.* Such a situation is clearly distinct from the one before us, where the Harvey Firm moved for summary judgment on the attorney-deceit claim and then both parties addressed the proper construction of the statute (the ground the district court entered summary judgment on) in their briefing.

Nor can Valle Norte claim any harm in not being able to respond to the specific interpretation adopted by the district court. Having been placed on notice by the Harvey Firm's motion for summary judgment that the statute was at issue, and by arguing itself about the proper construction of the statute, Valle Norte "was obliged to marshal [all of its] arguments" relating to the statute. *United States v. Nacchio*, 555 F.3d 1234, 1253 (10th Cir. 2009). "Our adversary system of justice simply does not afford a respondent, like [Valle Norte], the luxury of ignoring the ebb and flow of litigation and steadfastly adhering to the initial framing of the issues." *Id.* Moreover, Valle Norte has not indicated that there is any additional evidence it could have marshaled that would have aided or been necessary for the district court's determination, and likely could not do so because the proper interpretation of the statute is a pure issue of law. Finally, Valle Norte has had the opportunity to be fully heard on appeal and to respond to the interpretation of the statute, and we have found these responses to be wanting.

**V**

For the foregoing reasons, we conclude that the district court properly granted summary judgment in favor of the Harvey Firm on Valle Norte's claims of malicious abuse of process and attorney deceit. We therefore **AFFIRM** the decision of the district court.

Entered for the Court


JEROME A. HOLMES
Circuit Judge